**No. 25-2503**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

IOWA FARM SANCTUARY AND SHAWN CAMP

*Appellants*

v.

UNIVERSITY OF MISSOURI VETERINARY HEALTH CENTER,
by and through
CURATORS OF THE UNIVERSITY OF MISSOURI, COLUMBIA, ET AL.

*Appellees*

On Appeal from the United States District Court
for the Western District of Missouri, Central Division
No. 2:24-cv-04141-MDH
Hon. Douglas Harpool

**BRIEF OF APPELLANTS**

*Jessica L. Blome
Cyrus J. Moshiri
Greenfire Law, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
cmoshiri@greenfirelaw.com

*Attorneys for Appellants Iowa Farm Sanctuary and Shawn Camp*

## SUMMARY OF THE CASE

Appellants Iowa Farm Sanctuary and Shawn Camp, a nonprofit charitable organization and its executive director, filed suit against Appellees, the Curators of the University of Missouri, Joan Coates, Celeste Morris, and Jane Doe to enforce rights under 42 U.S.C. § 1983. Appellants alleged that they held a possessory interest in four sheep pursuant to state lien laws, that Appellees had knowledge of Appellants' claimed interest, and that Appellees euthanized the sheep without first giving notice and opportunity to be heard to Appellants. App. 138-39; R. Doc. 1, at 10-11. Appellants alleged that Appellees' destruction of the sheep resulted in deprivations of Appellants' constitutional rights to due process and to be free from unreasonable searches and seizures. App. 139-46; R. Doc. 1, at 11-18. The district court acknowledged that Appellants had a possessory interest in the sheep but granted Appellees' motion to dismiss the complaint on the sole ground that state law provided an adequate remedy for Appellants' claimed injuries, so Appellants failed to state a claim under 42 U.S.C. §1983. App. 219-20; R. Doc. 86, at 7-8.

Appellants respectfully request 30 minutes for oral argument in this appeal. This appeal presents unresolved questions about whether the availability of state lien remedies forecloses claims under 42 U.S.C. § 1983 seeking relief for deprivation of constitutional rights, for which oral argument will provide counsel the opportunity to answer any questions the justices may have.

2

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Iowa Farm Sanctuary states that it is a non-profit corporation registered with the Iowa Secretary of State's Office. Iowa Farm Sanctuary does not have a parent corporation, and no publicly held corporation owns ten percent or more of its stock.

3

# TABLE OF CONTENTS

I.    JURISDICTIONAL STATEMENT ................................................9

II.   STATEMENT OF ISSUES ......................................................9

III.  STATEMENT OF THE CASE...................................................10

    A.   Background of the Parties ...........................................10

    B.   Missouri Lien Statutes ..............................................11

    C.   Timeline of Events ..................................................13

    D.   Procedural History ..................................................15

IV.   SUMMARY OF ARGUMENT .................................................17

V.    STANDARD OF REVIEW.....................................................24

VI.   ARGUMENT ...................................................................24

    A.   Farm Sanctuary Plaintiffs sufficiently stated a claim under 42
         U.S.C. § 1983.........................................................24

    B.   Farm Sanctuary Plaintiffs maintained standing to secure a
         prospective injunction................................................27

    C.   Existence of a state remedy does not preclude Farm Sanctuary
         Plaintiffs' claims under 42 U.S.C. § 1983............................31

        1.   The *Parratt-Hudson* Doctrine does not preclude Farm
              Sanctuary Plaintiffs' federal claim for violation of
              procedural due process under the Fourteenth Amendment. .......35

        2.   The *Parratt-Hudson* Doctrine does not apply to Farm
              Sanctuary Plaintiffs' federal claim for violation of
              substantive due process under the Fourteenth Amendment
              or violation of the Fourth Amendment. .....................41

VII.  UNIVERSITY DEFENDANTS ARE PROPERLY NAMED PARTIES TO
      THE LAWSUIT .................................................................44

    A.   The Curators are subject to suit under Missouri state law and are
         not immune under the Eleventh Amendment. ......................44

    B.   Individual Defendants are not immune from suit under the
         Eleventh Amendment................................................48

VIII. CONCLUSION ................................................................49

Appellate Case: 25-2503    Page: 4    Date Filed: 10/09/2025 Entry ID: 5566322

**TABLE OF AUTHORITIES**

**Cases**

*Burdiss v. Chamberlain*,
  No. 4:21-CV-1516RLW, 2022 WL 103302 (E.D. Mo. Jan. 11, 2022).................34

*Cleveland v. Board of Education v. Loudermill*,
  470 U.S. 532 (1985)...........................................................................34

*Coleman v. Watt*,
  40 F.3d 255 (8th Cir. 1994).................................................35, 39, 40

*Daniels v. Williams*,
  474 U.S. 327 (1986)...................................................................21, 42

*Dubose v. Kelly*,
  187 F.3d 999 (8th Cir. 1999).......................................................25

*Duncan v. Poythress,*
  459 U.S. 1012 (1982)....................................................................43

*Duncan v. Poythress*,
  657 F.2d 691 (5th Cir. 1981)........................................................43

*Edelman v. Jordan*,
  415 U.S. 651 (1974)...................................................................23, 46

*Estelle v. Gamble*,
  429 U.S. 97 (1976)........................................................................41

*Ex parte Young*,
  209 U.S. 123 (1908)......................................................22, 23, 45, 48

*FDA v. All. For Hippocratic Med.*,
  602 U.S. 367 (2024).......................................................................27

*Fuentes v. Shevin*,
  407 U.S. 67 (1972)...................................................................passim

*Gentry v. Lee's Summit*,
  10 F.3d 1340 (8th Cir. 1993)........................................................38

*Goldberg v. Kelly*,
  397 U.S. 254 (1970)......................................................................34

*Green v. Mansour*,
  474 U.S. 64 (1985)........................................................................22

5

*Greenwood v. Ross*
    778 F.2d 448 (8th Cir. 1985)....................................................23, 45, 46

*Gunter v. Farmers Ins. Co.*,
    736 F.3d 768  (8th Cir. 2013)..............................................................24

*Hadley v. N. Ark. Cmty. Tech. Coll.*,
    76 F.3d 1437 (8th Cir. 1996)..........................................................45, 47

*Heartland Acad. Cmty. Church v. Waddle*,
    427 F.3d 525 (8th Cir. 2005)................................................................48

*Hudson v. Palmer*,
    468 U.S. 517 (1984)..............................................................32, 33, 34

*Kovats v. Rutgers, The State Univ.*,
     882 F.2d 1303 (3d Cir. 1987)..............................................................45

*Logan v. Zimmerman Brush Co.*,
    455 U.S. 422 (1982)...........................................................9, 35, 39, 40

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)..........................................................................31, 32

*Memphis Light, Gas & Water Div. v. Craft*,
    436 U.S. 1 (1978)..................................................................................34

*Monroe v. Pape*,
    365 U.S. 167 (1961)......................................................21, 40, 41, 43

*Murphy v. Arkansas*,
    127 F.3d 750 (8th Cir. 1997)..........................................................23, 48

*Northstar Indus. v. Merrill Lynch & Co.*,
    576 F.3d 827 (8th Cir. 2009)................................................................24

*Parratt v. Taylor*,
    451 U.S. 527 (1981)......................................................................passim

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 (1984)........................................................................22, 44

*Sherman v. Curators of the Univ. of Mo.*,
    16 F.3d 860 (8th Cir. 1994)............................................................23, 45

*Thibodeaux v. Bordelon*,
    740 F.2d 329 (5th Cir. 1984)................................................................43

*Thomas v. St. Louis Bd. of Police Comm'rs*,
    447 F.3d 1082 (8th Cir. 2006)........................................................45, 47

Appellate Case: 25-2503      Page: 6      Date Filed: 10/09/2025 Entry ID: 5566322

*Treleven v. Univ. of Minn.*,
  73 F.3d 816 (8th Cir. 1996)...................................................................48

*Walters v. Wolf*,
  660 F.3d 307 (8th Cir. 2011)..........................................................passim

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989)...........................................................................48

*Wolf-Lillie v. Sonquist*,
  699 F.2d 864 (7th Cir. 1983)............................................................43

*Zinermon v. Burch*,
  494 U.S. 113 (1990)........................................................................passim

**Statutes**

28 U.S.C. § 1291 .................................................................................9

28 U.S.C. § 1331 .................................................................................9

28 U.S.C. § 1332 .................................................................................9

42 U.S.C. § 1983 .....................................................................9, 15, 17

Mo. Rev. Stat. § 1.020(12) ...............................................................22

Mo. Rev. Stat. § 172.020 ...........................................................22, 47

Mo. Rev. Stat. § 430.150 ...........................................................passim

Mo. Rev. Stat. § 430.160 ...........................................11, 26, 31, 39

Mo. Rev. Stat. § 430.165 ...........................................25, 26, 29, 31

Mo. Rev. Stat. § 430.165.1 ...............................................................11

Mo. Rev. Stat. § 430.165.2 ...............................................................11

Mo. Rev. Stat. § 578.016 ............................................................passim

Mo. Rev. Stat. § 578.016.1 ...............................................................12

Mo. Rev. Stat. § 578.016.1(2) ....................................................12, 37

Mo. Rev. Stat. § 578.016.*2* .............................................................12

Mo. Rev. Stat. § 578.016.3 ...............................................................12

Appellate Case: 25-2503     Page: 7     Date Filed: 10/09/2025 Entry ID: 5566322

**Regulations**

Mo. Code Regs. Ann. tit. 2, § 30-9010(2)(X) (2023) ................................30

Mo. Code Regs. Ann. tit. 2, § 30-9020(13)(F)2 (2023) ...........................30

Mo. Code Regs. Ann. tit. 20, § 2270-6.011(19) (2019) .........................30

**Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................9, 17

**Other Authorities**

*Am. Veterinary Med. Ass'n, AVMA Guidelines for the Euthanasia of Animals: 2013 Edition* § 1.1, at 43 (2013) ....................................................30

**Constitutional Provisions**

Mo. Const. art. IV, § 9 .............................................................22, 47

Mo. Const. art. IX, § 9(a) ..............................................................47

U.S. Const. Amend. XIV ..............................................................44

U.S. Const. Amend. XIV, § 1 .........................................................31

8

## I. JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331, as Appellants' complaint alleges claims arising under 42 U.S.C. § 1983. App. 130-31; R. Doc. 39, at 2-3. The district court also had jurisdiction under 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy exceeded $75,000. App. 131; R. Doc. 1, at 3. This Court has jurisdiction under 28 U.S.C. § 1291, because the district court issued a final judgment on June 25, 2025, granting Appellees' motion to dismiss the complaint. App. 219-221; R. Docs. 86, at 7-8, 87. Appellants timely filed a notice of appeal on July 25, 2025. Fed. R. App. P. 4(a); *see* App. 222-23; R. Doc. 98.

## II. STATEMENT OF ISSUES

The issue presented for appeal is whether Appellants sufficiently stated a claim upon which relief can be granted under 42 U.S.C. § 1983. Appellants identify the following cases and statutes as the most apposite:

- *Parratt v. Taylor*, 451 U.S. 527 (1981);

- *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982);

- *Zinermon v. Burch*, 494 U.S. 113 (1990);

- *Walters v. Wolf*, 660 F.3d 307 (8th Cir. 2011);

- 42 U.S.C. § 1983; and

- Fed. R. Civ. P. 12(b)(6).

### III. STATEMENT OF THE CASE

#### A. Background of the Parties

Appellants are Iowa Farm Sanctuary, a nonprofit charitable organization, and its executive director, Shawn Camp (hereinafter collectively referred to as "Farm Sanctuary Plaintiffs"). Farm Sanctuary Plaintiffs are dedicated to rescuing and rehabilitating farmed animals who have been injured, neglected, or are otherwise in need of help. App. 131; R. Doc. 39, at 3. Farm Sanctuary Plaintiffs provide a permanent residence where rescued animals can receive care and treatment tailored to their unique needs. App. 132; R. Doc. 39, at 4. Farmers, breeders, law enforcement officers, and members of the public may surrender animals to Farm Sanctuary Plaintiffs, so those animals have an opportunity to live out their lives as an alternative to slaughter. App. 132; R. Doc. 39, at 4. Farm Sanctuary Plaintiffs also respond to calls for animal rescue in the aftermath of freeway accidents and natural disasters to offer aid as needed, including seeking treatment for injured animals who have been abandoned or surrendered to Farm Sanctuary Plaintiffs. App. 132; R. Doc. 39, at 4. Though Iowa Farm Sanctuary has its principal place of business in Oxford, Iowa, it operates and has members in surrounding Midwestern states, including Missouri. App. 131-32; R. Doc. 39, at 3-4.

Appellees are the Curators of the University of Missouri and personnel

employed at the University of Missouri Veterinary Health Center in Columbia,

Missouri, in various roles during the relevant period in June of 2023, including Dr.

Celeste Morris, D.V.M., Dr. Joan Coates, D.V.M., and Dr. Jane Doe, D.V.M.[1]

(hereinafter collectively referred to as "University Defendants"). App. 132-33; R.

Doc. 39, at 4-5.

### B.    Missouri Lien Statutes

Missouri Revised Statute, section 430.165 governs lien entitlement for the

care of animals lawfully impounded and provides that "any animal lawfully

impounded under the laws of this state or ordinances of any of its political

subdivisions may be placed by the impounding officer in the care of any

incorporated humane society or other responsible person designated by the

impounding authority." Mo. Rev. Stat. § 430.165.1. Section 430.165 further

provides that "any incorporated humane society or other person designated to care

for an animal under [Mo. Rev. Stat. § 430.165.1] . . . shall be entitled to a lien on

the animal for the reasonable cost of the care of the animal, as provided in sections

430.150 and 430.160." *Id.* § 430.165.2. Missouri Revised Statute, section 430.150

---

[1]    Farm Sanctuary Plaintiffs identified the fictitiously named defendant as Dr.
Austin Hinds, D.V.M., who is no longer employed at the University. Farm
Sanctuary Plaintiffs discovered Dr. Hinds' involvement in the acts complained of at
his deposition on June 15, 2025, which occurred 10 days prior to the dismissal of
this case.

11

also provides that every person who keeps or boards an animal shall have a lien on the animal for the amount due. *Id*. § 430.150. No one, including the putative owner, "shall have the right to take any such property out of the custody of the person having such lien, except with his consent or on the payment of such debt." *Id*.

Missouri Revised Statute, section 578.016 governs the impoundment procedure for animals found outside the property of the owner or custodian and provides that a duly authorized law enforcement official may impound any such animal when the animal shows evidence of neglect or abuse. *Id*. § 578.016.1. The animal must be placed in the care or custody of a veterinarian or the appropriate animal control authority or shelter, and "shall not be disposed of unless disabled beyond recovery for any useful purpose until the expiration of a minimum of five business days, during which time the public shall have clear access to inspect or recover the animal." *Id*. § 578.016.1(2). Any person incurring reasonable costs for the care and maintenance of such animal has a lien against the animal "until the reasonable costs have been paid." *Id*. § 578.016.2. The owner of any animal killed pursuant to Missouri Revised Statute, section 578.016 is entitled to recover the value of the animal up to six hundred dollars if the owner can show the killing was unwarranted. *Id*. § 578.016.3.

Appellate Case: 25-2503     Page: 12     Date Filed: 10/09/2025 Entry ID: 5566322

### C.     Timeline of Events

State law enforcement officials impounded a group of sheep involved in a motor vehicle accident on June 25, 2023. App. 138; R. Doc. 39, at 10. Ms. Camp, along with several members of Iowa Farm Sanctuary residing in Missouri, traveled to the scene of the accident near Troy, Missouri, whereupon law enforcement officials placed in the custody of Farm Sanctuary Plaintiffs six impounded sheep who were being held at a nearby facility and appeared to be suffering. App. 134, 138; R. Doc. 39, at 6, 10.

On June 25, 2023, Ms. Camp transported the six sheep to the University of Missouri Veterinary Health Center in Columbia, Missouri, and paid a one thousand dollar deposit for University Defendants' veterinary services. App. 135; R. Doc. 39, at 7. Dr. Celeste Morris and an intern working under her supervision, Dr. Johnathan Archer, contacted Ms. Camp later that evening to discuss potential treatment options and consult with Ms. Camp regarding recovery outcomes for the six sheep. App. 135; R. Doc. 39, at 7. Upon consideration of the prognoses provided by Drs. Morris and Archer, Ms. Camp authorized euthanasia of two of the six sheep. App. 135; R. Doc. 39, at 7. Drs. Morris and Archer advised Ms. Camp the four surviving sheep would be good candidates for treatment and "would all eventually thrive" at the Iowa Farm Sanctuary. App. 135; R. Doc. 39, at 7.

13

On June 26, 2023, University Defendants contacted Ms. Camp and requested additional payment for an invoice reflecting services that exceeded the initial deposit. App. 136; R. Doc. 39, at 8. Ms. Camp expressed her willingness to pay but also requested an update on the status of the four living sheep. App. 136; R. Doc. 39, at 8. University Defendants advised Ms. Camp that the owner of the sheep had resurfaced, and University Defendants could not release information to Ms. Camp because she was not the owner. App. 136; R. Doc. 39, at 8. University Defendants repeated their request for additional payment. App. 136; R. Doc. 39, at 8. Ms. Camp again requested information relating to status of the sheep and necessity of the additional charges, and University Defendants again stated they would not release information to Ms. Camp. App. 136; R. Doc. 39, at 8.

On June 27, 2023, counsel for Farm Sanctuary Plaintiffs advised University Defendants' general counsel that Farm Sanctuary Plaintiffs intended to enforce their veterinary services lien against the owner of the surviving sheep pursuant to Missouri lien statutes. App. 136; R. Doc. 39, at 8. Counsel for Farm Sanctuary Plaintiffs asked University Defendants to confirm whether the sheep were alive, but University Defendants would not release information about the status of the sheep to counsel. App. 136; R. Doc. 39, at 8.

On June 29, 2023, Farm Sanctuary Plaintiffs sued the putative owner of the sheep in Missouri state court seeking enforcement of their lien claims and

14

demanding return of the sheep in replevin. App. 137; R. Doc. 39, at 9. On June 30, 2023, more than one week after Ms. Camp placed the sheep in the University Defendants' care, counsel for the putative owner advised Farm Sanctuary Plaintiffs' counsel that his client had ordered the euthanasia of the four living sheep on June 26. App. 137; R. Doc. 39, at 9. Farm Sanctuary Plaintiffs dismissed their replevin action in state court upon discovering the sheep had been euthanized by University Defendants. App. 138; R. Doc. 39, at 10. Ms. Camp suffered serious emotional distress and injuries as a direct result of University Defendants' actions and wanton disregard for her constitutional rights. App. 141, 146; R. Doc. 39, at 13, 18.

### D. Procedural History

On August 20, 2024, Farm Sanctuary Plaintiffs filed suit against the Curators, Dr. Joan Coates in her official and individual capacity, and fictitiously named defendant Dr. Jane Doe in her official and individual capacity alleging causes of action arising under 42 U.S.C. § 1983 and seeking declaratory and injunctive relief. App. 1-19; R. Doc. 1. The Curators and Dr. Coates filed a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction on September 18, 2024. App. 20-23; R. Doc. 10. Farm Sanctuary Plaintiffs amended their complaint adding Dr. Celeste Morris as a defendant but did not add new causes of action, legal claims, or requests for relief. App. 129-48; R. Doc. 39.  In

their operative complaint, Farm Sanctuary Plaintiffs allege that University Defendants' seizure and destruction of the sheep violated Farm Sanctuary Plaintiffs' right to be secure from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution as well as their rights to procedural and substantive due process under the Fourteenth Amendment to the United States Constitution. App. 139-45; R. Doc. 39, at 11-17. Farm Sanctuary Plaintiffs allege that Drs. Coates, Morris, and Doe were acting under color of state law based on their official duties through their positions at the Veterinary Center when Drs. Morris and Doe euthanized the sheep and deprived Farm Sanctuary Plaintiffs of their property and due process rights even though University Defendants knew or should have known there was a genuine property dispute at issue. App. 140, 143, 145; R. Doc. 39, at 12, 15, 17. Farm Sanctuary Plaintiffs requested prospective injunctive relief for all counts to prevent continuing violations of University Defendants' statutory duties and due process rights of Farm Sanctuary Plaintiffs under the United States Constitution. App. 141-42, 144, 146-47; R. Doc. 39, at 13-14, 16, 18-19.

University Defendants moved to dismiss Farm Sanctuary Plaintiffs' operative complaint, advancing numerous arguments including jurisdictional issues, sovereign immunities, lack of standing, failure to state a claim, and other related reasons. App. 150-52; R. Doc. 49, at 2-4. On June 25, 2025, the district

16

court issued a final judgment granting University Defendants' motion to dismiss Farm Sanctuary Plaintiffs' operative complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) on the sole ground that Missouri state law provided an adequate remedy for Farm Sanctuary Plaintiffs' claimed loss and injury and, as such, Farm Sanctuary Plaintiffs' failed to state a federal claim upon which relief can be granted under 42 U.S.C. § 1983. App. 219-220; R. Doc. 86, at 7-8. The district court declined to address any other argument raised by University Defendants in their motion to dismiss. App. 220; R. Doc. 86, at 8.

## IV.   SUMMARY OF ARGUMENT

This case asks the Court to recognize that a federally funded public university owes its clients some level of due process before state officials can destroy property by killing four healthy animals without their clients' consent. The district court's judgment erroneously concluded that University Defendants are free from the restraint of federal constitutional protections, and its decision ultimately suffers from flaws on the merits. This Court should reverse the district court's decision and remand the matter for consideration on the merits for the following reasons.

First, Farm Sanctuary Plaintiffs sufficiently stated a claim under 42 U.S.C. § 1983. Farm Sanctuary Plaintiffs alleged they had a constitutionally protected property interest as to the sheep established under Missouri lien statutes. App. 139;

17

R. Doc. 39, at 11. Farm Sanctuary Plaintiffs further alleged that University Defendants were acting under color of state law when they deprived Farm Sanctuary Plaintiffs of their property and right to due process by killing the sheep without first noticing opportunity or process for Farm Sanctuary Plaintiffs to consent or otherwise be heard, notwithstanding the fact that University Defendants could foresee the deprivation and feasibly provide such process. App. 138-40, 142-43, 145; R. Doc. 39, at 10-12, 14-15, 17.

Farm Sanctuary Plaintiffs maintain standing to state a claim for relief under 42 U.S.C. § 1983. Farm Sanctuary Plaintiffs have demonstrated a causal connection between their injuries and University Defendants' conduct, and that it is likely the injuries will be redressed by a favorable decision. Farm Sanctuary Plaintiffs are likely to suffer similar injury by University Defendants in the future. Farm Sanctuary Plaintiffs undertake rescues for farmed animals involved in freeway accidents within Missouri and in geographic proximity to University Defendants' Veterinary Health Center. App. 147; R. Doc. 39, at 4-5. Farm Sanctuary Plaintiffs rely on University Defendants' services and thus face an ongoing and likely threat of again being deprived of their rights violated in this case. Farm Sanctuary Plaintiffs requested prospective injunctive relief tailored to the specific harm suffered, including an injunction to develop and train employees to ensure compliance with Missouri lien statutes concerning disputed property

18

interests to prevent future constitutional violations. App. 147; R. Doc. 39, at 19. In addition, Ms. Camp has sufficiently alleged a personal stake in the outcome of the controversy and suffered direct and independent injury as a result of University Defendants' unlawful conduct. App. 135-37; R. Doc. 39, at 7-9. Farm Sanctuary Plaintiffs are therefore entitled to standing to state a claim under 42 U.S.C. § 1983.

Next, the district court erred in concluding that Farm Sanctuary Plaintiffs failed to state a claim under 42 U.S.C. § 1983 because the state provided an adequate remedy for Farm Sanctuary Plaintiffs' claimed injuries. The existence of post-deprivation state remedies does not alone satisfy due process and bar Farm Sanctuary Plaintiffs' federal civil rights claims. Post-deprivation state remedies may satisfy due process only in limited circumstances where the deprivation was the result of a random and unauthorized act by a state employee. *Parratt v. Taylor*, 451 U.S. 527, 541 (1981). The deprivations in this case were not the result of a random and unauthorized act, but rather, the foreseeable result of established state procedure. "When an established state procedure or foreseeable consequence of such a procedure causes the loss, an adequate post-deprivation remedy is of no consequence, and the court focuses solely on the process afforded by the established procedures." *Walters v. Wolf*, 660 F.3d 307, 313 (8th Cir. 2011). No process was afforded by University Defendants' procedures.

19

In this case, the state delegated to University Defendants, licensed veterinarians at a state veterinary hospital, the unique authority to euthanize animals, the misuse of which caused the exact deprivation complained of here. The state also delegated to University Defendants the concomitant duty to initiate procedural safeguards and first determine property ownership to guard against unconsented killing. Once University Defendants became aware of a competing ownership claim, University Defendants were positioned to foresee the deprivation and feasibly provide a pre-deprivation process. Instead, University Defendants authorized the destruction of the sheep without initiating any process for Farm Sanctuary Plaintiffs to be heard. Because University Defendants could anticipate that the deprivation would occur at a predictable point, University Defendants were required to provide a pre-deprivation process but failed to do so. *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (citing *Fuentes v. Shevin*, 407 U.S. 67, 80-84 (1972)). Post-deprivation state remedies do not satisfy the requirements of procedural due process under these factual conditions and do not bar Farm Sanctuary Plaintiffs from stating a claim under 42 U.S.C. § 1983.

Nor does the existence of a state remedy prevent claims for violations of substantive due process or rights protected under the Bill of Rights. A plaintiff may bring an action under 42 U.S.C. § 1983 for an unlawful search and seizure even if the search and seizure violates state statutes and there are state law remedies.

*Zinermon*, 494 U.S. at 124. For claims involving violations of the Bill of Rights and substantive component of the due process clause, the constitutional violation actionable under 42 U.S.C. § 1983 is complete when the wrongful action is taken. *Id*. at 125 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). In such situations, "[i]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *Zinermon*, 494 U.S. at 124 (citing *Monroe v. Pape*, 365 U.S. 167, 183 (1961)). University Defendants' seizure and destruction of the sheep violated Farm Sanctuary Plaintiffs' rights secured under both the Fourth and Fourteenth Amendments to the United States Constitution. App. 140, 145; R. Doc. 39, at 12, 17. As such, the existence of a state remedy does not bar Farm Sanctuary Plaintiffs from invoking relief under 42 U.S.C. § 1983 for violations of protections afforded by the Bill of Rights and the substantive component of the due process clause.

Second, to the extent this Court in its discretion elects to review issues that were raised by University Defendants but not analyzed by the district court in rendering its final judgment, Farm Sanctuary Plaintiffs assert that University Defendants are properly named parties to this lawsuit and lack immunity to Farm Sanctuary Plaintiffs' claims seeking prospective injunctive relief under 42 U.S.C. § 1983.

Appellate Case: 25-2503    Page: 21    Date Filed: 10/09/2025 Entry ID: 5566322

The Curators is subject to suit as a "person" under 42 U.S.C. § 1983 because it has statutory power to sue and be sued pursuant to Missouri state law. Mo. Rev. Stat. §§ 1.020(12), 172.020. The Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law. *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Ex parte Young*, 209 U.S. 123, 155-56, 159 (1908)). Farm Sanctuary Plaintiffs seek injunctive relief to prevent continuing violation of federal law against the Curators, which is a "body politic" of the State of Missouri. Mo. Const. art. IV, § 9; Mo. Rev. Stat. § 172.020. Specifically, Farm Sanctuary Plaintiffs seek injunctions compelling the Curators to comply with laws concerning disputed property interests and liens for the care of animals in Missouri and do not seek damages from the Curators.[2] App. 141, 144, 146; R. Doc. 39, at 13, 16, 18. The claim alleged against the Curators is the type permitted by the *Ex parte Young* principle.

The Curators is not immune from suit under the Eleventh Amendment. The Eleventh Amendment prevents states from being sued in federal court unless they consent or Congress expresses its intent to abrogate such immunity. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984). But each state

---

[2]     Farm Sanctuary Plaintiffs conceded their claim to damages against the Curators in their opposition brief to University Defendants' motion to dismiss before the district court. App. 182; R. Doc. 53, at 4. Farm Sanctuary Plaintiffs again waive any claim to monetary damages against the Curators and only seek injunctive and declaratory relief as to the Curators.

Appellate Case: 25-2503     Page: 22     Date Filed: 10/09/2025 Entry ID: 5566322

university claiming immunity under the Eleventh Amendment "must be considered on the basis of its own particular circumstances." *Greenwood v. Ross* 778 F.2d 448, 453 (8th Cir. 1985). State-connected entities or subdivisions do not always share in their state's immunity, and Eleventh Amendment protection must be determined on a case-by-case basis. *Sherman v. Curators of the Univ. of Mo.*, 16 F.3d 860, 862 (8th Cir. 1994). To determine whether the Eleventh Amendment applies to a subdivision of the state, this Court considers "most importantly whether the funds to pay any award will be derived from the state treasury." *Id*. at 863; *see also Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (finding that fiscal consequences to state treasuries resulting from compliance with prospective injunctive relief are permissible). Because Farm Sanctuary Plaintiffs' claims against the Curators are limited to injunctive and non-monetary damages, an award in favor of Farm Sanctuary Plaintiffs does not derive from state funds and the Curators therefore cannot share in state immunity under the Eleventh Amendment.

Moreover, the Eleventh Amendment does not bar claims for damages against state officials acting in their personal capacities, nor claims for prospective relief against individual defendants acting in their official capacities. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). The case of *Ex parte Young*, 209 U.S. 123 (1908), created an exception to the general rule of Eleventh Amendment immunity asserting that a suit challenging the constitutionality of a state official's

23

action in enforcing state law is not one against the State. *Id*. at 159-60. Because this is precisely the claim that Farm Sanctuary Plaintiffs allege against Drs. Coates, Morris, and Doe, they are not shielded under the Eleventh Amendment.

## V. STANDARD OF REVIEW

This Court reviews de novo a district court's grant of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Gunter v. Farmers Ins. Co.*, 736 F.3d 768, 771 (8th Cir. 2013). Factual allegations contained in the complaint are accepted as true and the complaint is construed most favorably to the nonmoving party. *Northstar Indus. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009). "To survive a motion to dismiss, the factual allegations, assumed true, must suffice to state a claim to relief that is plausible on its face." *Id*. Against this standard of review, the district court's judgment suffers from fundamental flaws on the merits and should be reversed for reasons detailed below.

## VI. ARGUMENT

### A. Farm Sanctuary Plaintiffs sufficiently stated a claim under 42 U.S.C. § 1983.

"In any § 1983 action the initial inquiry must focus on whether the two essential elements to a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured

24

by the Constitution or laws of the United States." *Dubose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). Farm Sanctuary Plaintiffs have met both elements.

First, Farm Sanctuary Plaintiffs sufficiently allege that Drs. Coates, Morris, and Doe were acting under color of state law based on their official duties through their positions as supervisory or attending veterinarians at the Veterinary Health Center when they seized and destroyed Farm Sanctuary Plaintiffs' property without first providing due process to Farm Sanctuary Plaintiffs. App. 133, 140, 143, 145; R. Doc. 39, at 5, 12, 15, 17; *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (conduct by state employees in positions of authority satisfy the "under color of state law" requirement). Second, Farm Sanctuary Plaintiffs allege that University Defendants' actions deprived Farm Sanctuary Plaintiffs of their Fourth Amendment rights to be free from unreasonable searches and seizures, procedural due process rights to notice and opportunity to be heard before the deprivation of property, and substantive due process rights.

Farm Sanctuary Plaintiffs held a valid property interest in the sheep that University Defendants destroyed. On June 25, 2023, a Missouri State Highway Patrol Trooper lawfully impounded the sheep and placed them in Farm Sanctuary Plaintiffs' custody because the sheep appeared to be neglected after surviving a freeway tractor-trailer collision. App 133-34, 138; R. Doc. 39, at 5-6, 10; *see* Mo. Rev. Stat. §§ 430.165, 578.016. On June 25, 2023, Ms. Camp accepted custody of

25

the sheep, transported the sheep to University Defendants' Veterinary Center, paid a one thousand dollar deposit for veterinary services, consulted extensively with Dr. Morris and Dr. Archer regarding the disposition and treatment of the sheep, authorized and consented to the euthanasia of two critically injured sheep, and was assured that the four surviving sheep would be good candidates for veterinary treatment and would "thrive" at IFS. App. 135; R. Doc. 39, at 7; *see* Mo. Rev. Stat. §§ 430.150, 430.165. Based on these facts, Farm Sanctuary Plaintiffs held a valid property interest in the sheep in the form of a lien under Missouri state law. App. 139; R. Doc. 39, at 11; *see* Mo. Rev. Stat. §§ 430.150, 430.160, 430.165, 578.016.

The district court agreed: "[A]ny right Plaintiffs had to the sheep, or for reimbursement for care of the sheep, originated in State law. The Missouri Revised Statutes granted and govern Plaintiff's lien rights as to the sheep…" App. 219; R. Doc. 86, at 7. Despite the fact that University Defendants knew or should have known of Farm Sanctuary Plaintiffs' property interest in the sheep and could reasonably foresee the deprivation upon notice of a genuine property dispute, University Defendants nevertheless authorized and carried out the destruction of the sheep without first noticing a pre-deprivation process or opportunity for Farm Sanctuary Plaintiffs to be heard.

For purposes of notice pleading, Farm Sanctuary Plaintiffs have sufficiently alleged that University Defendants' actions under color of state law directly

Appellate Case: 25-2503    Page: 26    Date Filed: 10/09/2025 Entry ID: 5566322

deprived Farm Sanctuary Plaintiffs of their property and due process rights and have therefore stated a claim upon which relief can be granted under 42 U.S.C. § 1983.

**B. Farm Sanctuary Plaintiffs maintained standing to secure a prospective injunction.**

To establish standing under Article III of the U.S. Constitution, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. For Hippocratic Med.*, 602 U.S. 367, 380 (2024). Enjoining a defendants' action that causes an injury will typically redress that injury. *Id*. at 381. "The two key questions in most standing disputes are injury in fact and causation." *Id*. Farm Sanctuary Plaintiffs have shown actual injury and deprivation of their rights to due process and protection from unreasonable search and seizure as a direct result of University Defendants' sudden and permanent destruction of the sheep. Separately, Ms. Camp has independently alleged a personal stake in the outcome of the controversy and suffered direct and separate injury as a result of Defendants' unlawful conduct. App. 135-37; R. Doc. 39, at 7-9.

Farm Sanctuary Plaintiffs have also shown a sufficient likelihood that they will be wronged again in a similar way. As part of their core organizational activities, Farm Sanctuary Plaintiffs conduct rescues of farmed animals involved in

27

highway accidents. App. 132; R. Doc. 39, at 4. Farm Sanctuary Plaintiffs cover a large territory in Iowa and neighboring states where animal agriculture and regional transport of farmed animals for slaughter are prevalent. App. 131-32; R. Doc. 39, at 3-4. Likewise, Iowa Farm Sanctuary has members who reside in neighboring states, including Missouri, and assist in these rescue activities. App. 131-32, 134; R. Doc. 39, at 3-4, 6. Farm Sanctuary Plaintiffs conduct rescue activities within Missouri and in proximity to University Defendants' Veterinary Health Center, which offers extensive veterinary health services in the area. App. 132-33; R. Doc. 39, at 4-5. Due to the nature of their work as first responders, it is not uncommon that Farm Sanctuary Plaintiffs receive custody of highway-strayed animals from law enforcement officials who often must quickly clear the roadway and then impound the transported animals with the prospect of a remote former owner resurfacing. App. 132, 134; R. Doc. 39, at 4, 6. For highway rescues that occur in or around Missouri at any given moment, and especially for those rescues that occur outside of normal business hours, Farm Sanctuary Plaintiffs depend and rely on University Defendants' unique, around-the-clock emergency veterinary services for treating acutely injured large farm animals. For these reasons, Farm Sanctuary Plaintiffs face an ongoing and imminent threat of again being deprived of their rights violated in this case.

Additionally, Farm Sanctuary Plaintiffs requested prospective injunctive relief is tailored to the specific harm suffered. Farm Sanctuary Plaintiffs requested a prospective injunction to "comply with all laws and statutes concerning disputed property interest and liens for the care of animals in Missouri." App. 147; R. Doc. 39, at 19. Missouri law is clear on the procedures regarding a possessory interest in a lawfully impounded animal. Mo. Rev. Stat. § 430.150. It first requires consent by the lienholder, or payment of debt by the putative owner or any claimant, before the property can be taken out of the custody of lienholder. *Id*. § 430.150. It also provides a statutory process for notice and inspection prior to severing the property rights of the putative owner in favor of the lien holder, which the putative owner may satisfy by paying the costs of care. *Id*. §§ 430.150, 430.165, 578.016. Farm Sanctuary Plaintiffs requested injunctive relief that seeks compliance with these procedures.

Additionally, Farm Sanctuary Plaintiffs requested that University Defendants be enjoined "to develop and implement training for employees, contractors and agents to ensure compliance with *all applicable statutes, including but not limited* to §§ 430.150, 430.160, and 430.165, 578.016, RSMo, as part of Defendants' standard operating procedure for veterinary care." App. 147; R. Doc. 39, at 19 (emphasis added). The Missouri Veterinary Medical Board imposes consent requirements on licensed veterinarians before undertaking significant interventions

Appellate Case: 25-2503     Page: 29     Date Filed: 10/09/2025 Entry ID: 5566322

like anesthesia or surgical procedures. Mo. Code Regs. Ann. tit. 20, § 2270-6.011(19) (2019). While euthanasia is not expressly listed, the regulatory scheme delegates to professional norms by incorporation and includes guidelines promulgated by the American Veterinary Medical Association, which requires communication with owners regarding the decision to euthanize.[3] University Defendants' actions were at first compliant with state consent requirements as University Defendants affirmatively consulted with and requested consent from Ms. Camp to euthanize two of the six sheep, demonstrating their understanding of Farm Sanctuary Plaintiffs' ownership interests in the sheep and their obligations to secure Farm Sanctuary Plaintiffs' consent. But University Defendants' subsequent actions as to the remaining four sheep suddenly departed from state consent requirements and directly caused Farm Sanctuary Plaintiffs' injuries. Farm Sanctuary Plaintiffs' request for injunctive relief therefore seeks some level of training to ensure basic compliance with Missouri's applicable statutes regarding veterinary care and is thus measured to prevent similar future injuries. Accordingly,

---

[3]     *Am. Veterinary Med. Ass'n*, *AVMA Guidelines for the Euthanasia of Animals: 2013 Edition* § 1.1, at 43 (2013). Indeed, euthanasia is defined as "the act of putting an animal to death in a humane manner" and "shall be accomplished by a method specified as acceptable by the American Veterinary Medical Association Panel on Euthanasia." Mo. Code Regs. Ann. tit. 2, §§ 30-9010(2)(X), 30-9020(13)(F)2. (2023).

Appellate Case: 25-2503     Page: 30     Date Filed: 10/09/2025 Entry ID: 5566322

Farm Sanctuary Plaintiffs request for prospective relief satisfies the redressability requirement.

### C. Existence of a state remedy does not preclude Farm Sanctuary Plaintiffs' claims under 42 U.S.C. § 1983.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall…deprive any person of life, liberty or property, without due process of law. U.S. Const. Amend. XIV, § 1. The Supreme Court recognizes that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). There is no question that Farm Sanctuary Plaintiffs held a valid property interest in the sheep originating in Missouri lien statutes. Mo. Rev. Stat. §§ 430.150, 430.160, 430.165, 578.016. *See* Section VI.A. *infra.* The district court recognized Farm Sanctuary Plaintiffs' possessory interest in the sheep in its decision. App. 219; R. Doc. 86, at 7. Therefore, the only issue is whether University Defendants owed Farm Sanctuary Plaintiffs some form of procedural due process before destroying Farm Sanctuary Plaintiffs' property.

In *Mathews*, the Supreme Court described the factors that a court must balance to determine the process owed for a state to deprive an individual of his private property, including: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the

31

procedures used and value of any additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335. "Applying this test, the [Supreme] Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127; *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972) (acknowledging that due process tolerates variances but recognizing that opportunity for hearing generally must be provided before the deprivation at issue takes effect). "In some circumstances, however, the Court has held that a statutory provision for a postdeprivation hearing, or common-law tort remedy for erroneous deprivation, satisfies due process." *Zinermon*, 494 U.S. at 128.

Some exceptions to the *Mathews* test exist. The Supreme Court's decisions in *Parratt v. Taylor*, 451 U.S. 527 (1981) and *Hudson v. Palmer*, 468 U.S. 517 (1984) "represent special case[s] of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide." *Zinermon*, 494 U.S. at 128. In *Parratt*, the plaintiff was an inmate who sued prison officials under 42 U.S.C. § 1983 for hobby materials that he had purchased and that the prison officials had negligently misplaced. *Parratt*, 451 U.S. at 529. The *Parratt* Court

Appellate Case: 25-2503    Page: 32    Date Filed: 10/09/2025 Entry ID: 5566322

held that in cases where the deprivation is similar to a "tortious loss of a prisoner's property" resulting from a "random and unauthorized act by a state employee"—as opposed to "some established state procedure"—then adequate post-deprivation remedies satisfy the requirements of due process. *Walters v. Wolf*, 660 F.3d 307, 312 (8th Cir. 2011) (citing *Parratt,* 451 U.S. at 541). The *Parratt* Court reasoned that where the loss is not a result of established state procedure and the State cannot predict when the loss will occur, "in most cases it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation." *Parratt,* 451 U.S. at 541. The *Hudson* Court—also addressing a situation where an individual in the custody of the state had his property destroyed by a rogue state employee—extended *Parratt's* holding that predeprivation process is impracticable where the deprivation was caused by a state employee's negligence in cases where the deprivation was caused by a state employee's unauthorized, intentional, and independent acts. *Hudson*, 468 U.S. at 533.

Thus, when deprivation of property results from established state procedure or state-authorized acts, a state's post-deprivation remedies are insufficient to comply with the U.S. Constitution per *Mathews*. Indeed, in *Zinermon*, the Supreme Court acknowledged the *Parratt-Hudson* doctrine emphasizes the state's inability to provide predeprivation process but affirmed that "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally

Appellate Case: 25-2503    Page: 33    Date Filed: 10/09/2025 Entry ID: 5566322

must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Zinermon*, 494 U.S. at 132 (citing *Cleveland v. Board of Education v. Loudermill*, 470 U.S. 532, 542 (1985); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 18 (1978); *Fuentes*, 407 U.S. 67, 80-84 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 264 (1970)). Against this framework of *Parratt* and its progeny, the district court's reasoning that the mere availability of Missouri's lien statutes foreclosed Farm Sanctuary Plaintiffs' constitutional claims against University Defendants for denial of due process is flawed as a matter of law. App. 218-20; R. Doc. 86, at 6-8.

The district court reasoned that "any right [Farm Sanctuary Plaintiffs] had to the sheep, or for reimbursement for care of the sheep, originated in State law." App. 219; R. Doc. 86, at 7. The district court concluded that because the Missouri Revised Statutes granted and governed Farm Sanctuary Plaintiffs' lien rights, the state provided an adequate remedy, and Farm Sanctuary Plaintiffs thus failed to state a claim under 42 U.S.C. § 1983. App. 219; R. Doc. 86, at 7. In support of this conclusion the district court cited to a single decision issued by the United States District Court for the Eastern District of Missouri for the proposition that a plaintiff has no civil rights claim under 42 U.S.C. § 1983 if the state provides an adequate remedy. *Burdiss v. Chamberlain*, No. 4:21-CV-1516RLW, 2022 WL 103302, at *5 (E.D. Mo. Jan. 11, 2022) (citing *Hudson*, 468 U.S. at 530-36). This proposition

was not only misinterpreted to be an absolute principle but is wholly inapplicable to this case as a matter of law. Accordingly, the district court erred in concluding that Farm Sanctuary Plaintiffs failed to state a federal claim, as further explained in Sections VI.C.1. and VI.C.2., *infra.*

> **1.  The *Parratt-Hudson* Doctrine does not preclude Farm Sanctuary Plaintiffs' federal claim for violation of procedural due process under the Fourteenth Amendment.**

The Supreme Court clarified the limitation on *Parratt's* sweep in *Logan v. Zimmerman Brush Co.*, where it stated that "[u]nlike the complainant in *Parratt*, [the complainant in *Logan*] is challenging not the [state commission's] error, but the established state procedure that destroys his entitlement without according him proper procedural safeguards" *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436 (1982).  Since the state system itself rather than the random and unauthorized conduct of state officials destroyed complainant's property interest, the *Logan* Court concluded that predeprivation process was required. *Id*. at 434. The Eighth Circuit has "stated unequivocally that 'the availability of state law postdeprivation remedies bears relevance only where the challenged acts of state officials can be characterized as random and unauthorized.'" *Walters*, 660 F.3d at 314 (quoting *Coleman v. Watt*, 40 F.3d 255, 262 (8th Cir. 1994)).

On the facts alleged in Farm Sanctuary Plaintiffs' complaint, the property deprivations committed by University Defendants were authorized and carried out

35

pursuant to established procedure delegated by the state. App. 133; R. Doc. 39, at 5. The Supreme Court recognized that when the erroneous deprivation was effected by the very officials responsible under state law for providing predeprivation process, those officials may not escape liability by claiming that it is somehow impracticable for the State to provide predeprivation process. *Zinermon*, 494 U.S. 113 at 137-138.

Like the state officials operating pursuant to official state policy in *Zinermon*, the State of Missouri has delegated to University Defendants and its officials, attending veterinarians at a state veterinary hospital with supervisory responsibilities, the unique authority to euthanize the sheep and effect the exact deprivation complained of here. The state also delegated to University Defendants and its officials the concomitant duty to initiate procedural safeguards and first determine property ownership to guard against unconsented euthanasia. University Defendants were uniquely positioned to predict the actions of its officials before the deprivation occurred. And the erroneous deprivation occurred at a specific and predictable point in time. The opportunity for a pre-deprivation process became ripe as soon as University Defendants became aware of a property dispute and competing claim to the sheep after Farm Sanctuary Plaintiffs had consulted with University Defendants, authorized treatment, and paid for such treatment. App. 142-43; R. Doc. 39, at 14-15.

Appellate Case: 25-2503     Page: 36     Date Filed: 10/09/2025 Entry ID: 5566322

The fact that a dispute arose made it foreseeable that competing claims should be adjudicated before further action was undertaken as to the property, lest University Defendants seize, destroy, or otherwise interfere with property of the rightful owner without their consent. In fact, Missouri state law sets up a predeprivation process that expressly prohibits destruction of the animals until members of the public, like Farm Sanctuary Plaintiffs, are given "clear access" for a minimum of five business days to "inspect or recover" the animals. Mo. Rev. Stat. § 578.016.1.(2). Instead, under color of state law and by virtue of the authority delegated to University Defendants by the state, University Defendants denied Farm Sanctuary Plaintiffs access to the surviving sheep and authorized the seizure and destruction of the sheep without first initiating a process or noticing a meaningful opportunity for Farm Sanctuary Plaintiffs to be heard. App. 136-37, 139, 142-43; R. Doc. 39, at 8-9, 11, 14-15.

This case does not present a situation analogous to *Parratt* or *Hudson* where the security and enforcement needs underscoring a hospital ward search or a prison cell raid made it impracticable to provide a pre-deprivation hearing. In *Walters v. Wolf*, this Court found that a procedural due process violation occurred when the defendants, with no legal grounds, refused to return the plaintiff's property. *Walters*, 660 F.3d at 314-15. In reversing summary judgment on plaintiff's 42 U.S.C. § 1983 claim alleging a Fourteenth Amendment procedural due process

Appellate Case: 25-2503    Page: 37    Date Filed: 10/09/2025 Entry ID: 5566322

violation, this Court found that the deprivation committed by defendants had no attendant exigencies prohibiting or making impractical a reasonable predeprivation process. *Id.* This case is similar to *Walters* but goes even further because University Defendants not only refused to return the sheep but summarily destroyed them even though no exigent circumstances existed. *See Fuentes* 407 U.S. at 90-92 (summary seizure of property has been allowed in few limited extraordinary situations including national war efforts, economic disasters, and public health).

Moreover, this case is analogous to *Gentry v. Lee's Summit*, 10 F.3d 1340 (8th Cir. 1993) to the extent that University Defendants could have feasibly resorted to a predeprivation procedure in the absence of exigent circumstances. *Id.* at 1343-45. Not only was a predeprivation procedure feasible, but University Defendants had every reason to anticipate the need for it the moment they became aware of a competing ownership claim concerning the sheep. As this Court reasoned in *Gentry*, "some form of notice and opportunity for a hearing…might have proven very valuable for both sides." *Id.* at 1345. University Defendants need not have resorted to formal adjudication, but could have relieved themselves from the danger of erroneously euthanizing the sheep without due consent by a single telephone call to Farm Sanctuary Plaintiffs giving some notice and opportunity to be heard.

Appellate Case: 25-2503    Page: 38    Date Filed: 10/09/2025 Entry ID: 5566322

Finally, Eighth Circuit precedent "has emphasized the insufficiency of postdeprivation remedies for state-authorized deprivations." *Walters,* 660 F.3d at 314. In *Coleman*, this Court reversed the district court's grant of summary judgment and remanded the case concluding that a "one-week delay between impoundment [of a car] and a first hearing [addressing the impoundment's propriety] may constitute a denial of due process." *Coleman*, 40. F.3d. at 257. "'Absent the necessity of quick action by the State or the impracticality of providing any predeprivation process,' a post-deprivation hearing would be constitutionally inadequate. That is particularly true where… the State's only post-termination process comes in the form of an independent tort action. Seeking redress through a tort suit is apt to be a lengthy and speculative process, which…will never make the complainant entirely whole…" *Walters*, 660 F.3d at 313-14 (quoting *Logan*, 455 U.S. at 436-37).

The remedy proposed in the district court's judgment presents an even more tenuous option for Farm Sanctuary Plaintiffs as compared to the remedies available to complainants in *Coleman* and *Zimmerman*. App. 219; R. Doc. 86, at 7. The only remedy at Farm Sanctuary Plaintiffs' disposal would be, in theory, to file suit in circuit court seeking a judgment to enforce Farm Sanctuary Plaintiffs' lien. Mo. Rev. Stat. § 430.160. This would require multiple procedural steps, as in ordinary civil actions, and noticing of the putative owner of the sheep before the case can go

39

forward. The hearing itself must be scheduled at least ten days after the last notice is published or posted, further extending the timeline under section 430.160. *Id*. § 430.160. Only after proper notice, service, and a hearing can judgment be entered. Presumably this would be just as delayed if not more than the post-deprivation hearing deemed inadequate by this Court in *Coleman* and would almost certainly amount to a "lengthy and speculative process." *Coleman*, 40 F.3d. at 257; *Logan*, 455 U.S. 436-437.

Even assuming a successful suit, which at most would result in an award of six hundred dollars, the judgment would be limited to the putative owner. It would not vindicate Farm Sanctuary Plaintiffs' constitutional right to procedural due process under the Fourteenth Amendment as against University Defendants. Mo. Rev. Stat. § 578.016. *See Zinermon*, 494 U.S. at 124 (overlapping state remedies are generally irrelevant to the question of the existence of a cause of action under § 1983); *see also Monroe v. Pape*, 365 U.S. 167, 173-74 (1961) (relief under § 1983 was intended in part to provide a federal remedy where the state remedy, though adequate in theory, was not available in practice); *see also Fuentes*, 407 U.S. at 82 (no later hearing and no damage award can undo the fact that the arbitrary taking subject to the right of procedural due process has already occurred).

## 2. The *Parratt-Hudson* Doctrine does not apply to Farm Sanctuary Plaintiffs' federal claim for violation of substantive due process under the Fourteenth Amendment or violation of the Fourth Amendment.

In 42 U.S.C. 1983 claims involving substantive due process violations or infringements of specific rights secured by the Bill of Rights and incorporated through the due process clause, the Supreme Court noted that the existence of adequate state remedies is generally irrelevant. *Zinermon*, 494 U.S. at 124-25. As detailed in Sections VI.C. and VI.C.1. *supra*, the scope of the *Parratt-Hudson* doctrine only applies to bar claims for violation of procedural due process in limited circumstances where it is impracticable for the state to provide predeprivation procedures for the random and unauthorized actions of its officials. The Court clearly distinguished the conditions in *Parratt*, where the deprivation complained of involved only procedural due process rights under the Fourteenth Amendment, from cases such as *Monroe v. Pape*, 365 U.S. 167 (1961), where plaintiff's Fourth Amendment rights had been allegedly violated. *Parratt*, 451 U.S. at 536.[4] Since the scope of the *Parratt-Hudson* doctrine does not apply to

---

[4] Justice Rehnquist, writing for the majority, reasoned that "the only deprivation respondent alleges in his complaint is that 'his rights under the [Fourteenth Amendment] were violated. That he was deprived of his property and Due Process of Law.' App 8. As such, respondent's claims differ from the claims which were before us in *Monroe v. Pape*…which involved violations of the Fourth Amendment, and the claims presented in *Estelle v. Gamble*, 429 U.S. 97 (1976), which involved alleged violations of the Eighth Amendment. Both of these Amendments have been applicable to the States by virtue of the adoption of the

Appellate Case: 25-2503    Page: 41    Date Filed: 10/09/2025 Entry ID: 5566322

violations of constitutional rights contained in the Bill of Rights and rights made applicable to the states by virtue of the Fourteenth Amendment, Farm Sanctuary Plaintiffs are not precluded from stating a claim for violation of the Fourth Amendment and substantive due process rights. App. 139, 144; R. Doc. 39, at 11, 16.

In such cases where a substantive constitutional right was at issue, the Supreme Court has held that a plaintiff can maintain an action under 42 U.S.C. § 1983 irrespective of any available state remedy. *Parratt,* 451 U.S. at 536*.* A plaintiff "may bring [an action under 42 U.S.C. § 1983] for an unlawful search and seizure despite the fact that the search and seizure violated the State's Constitution or statutes". *Zinerman* 494 U.S. at 124-25. For claims invoking violations of the Bill of Rights and substantive component of the due process clause, the constitutional violation actionable under 42 U.S.C. § 1983 is complete when the wrongful action is taken. *Zinerman*, 494 U.S. at 125 (citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). In such situations, "[i]t is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the

---

Fourteenth Amendment…Respondent here refers to no other right, privilege, or immunity secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment *simpliciter*."

Appellate Case: 25-2503     Page: 42     Date Filed: 10/09/2025 Entry ID: 5566322

federal one is invoked." *Zinermon*., 494 U.S. at 124 (citing *Monroe*, 365 U.S. at 183).

In this case, Farm Sanctuary Plaintiffs allege that University Defendants' seizure and destruction of the sheep violated Farm Sanctuary Plaintiffs' rights secured under the Fourth Amendment and substantive due process under the Fourteenth Amendment. App. 140, 145; R. Doc. 39, at 12, 17. Even assuming the *Parratt-Hudson* doctrine satisfies procedural due process in this case, which it does not, the *Parratt-Hudson* doctrine does not work to prevent Farm Sanctuary Plaintiffs from seeking federal relief for violations of their substantive constitutional rights or protections under the Bill of Rights.[5]

For these reasons, the existence of a state remedy does not preclude Appellant from invoking federal relief for violations of protections afforded by the Fourth Amendment or the substantive component of the due process clause in the Fourteenth Amendment.

---

[5] Other federal courts have recognized this critical distinction. *Paratt*, 451 U.S. 536; *see, e.g., Wolf-Lillie v. Sonquist*, 699 F.2d 864, 871-72 (7th Cir. 1983) (fourth amendment)*; Thibodeaux v. Bordelon*, 740 F.2d 329 (5th Cir. 1984) (eighth amendment); *Duncan v. Poythress*, 657 F.2d 691, 704-05 (5th Cir. 1981), *cert.dismissed*, 459 U.S. 1012 (right to vote).

Appellate Case: 25-2503    Page: 43    Date Filed: 10/09/2025 Entry ID: 5566322

## VII. UNIVERSITY DEFENDANTS ARE PROPERLY NAMED PARTIES TO THE LAWSUIT

Farm Sanctuary Plaintiffs respectfully submit that this Court need not look beyond the reasoning in the district court's final judgment to weigh its decision on appeal. App. 217-21; R. Doc. 86, at 5-8; R. Doc. 87. However, to the extent this Court elects to review other points that were raised by University Defendants but not analyzed by the district court in issuing its final judgment (App. 149-52; R. Doc. 49, at 1-4),  Farm Sanctuary Plaintiffs reserve their arguments to avoid potential claims of waiver or forfeiture. To that end, Farm Sanctuary Plaintiffs assert that University Defendants are properly named parties to this lawsuit and lack immunity to Farm Sanctuary Plaintiffs' claims seeking prospective injunctive relief under 42 U.S.C. § 1983 for the reasons explained in Sections VII.A. and VII.B., *infra*.

### A. The Curators are subject to suit under Missouri state law and are not immune under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution prevents states from being sued in federal court unless they consent to it or Congress expresses its intent to abrogate such immunity. U.S. Const. Amend. XIV; *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984). But the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law. *Ex parte Young*, 209 U.S.

44

123, 155-6, 159 (1908). Furthermore, the Eleventh Amendment is not an absolute shield against suit for states and state-connected entities. Each state university claiming immunity under the Eleventh Amendment "must be considered on the basis of its own particular circumstances." *Greenwood v. Ross* 778 F.2d 448, 453 (8th Cir. 1985). Eighth Circuit precedent holds that state-connected entities or subdivisions do not always share in their state's immunity, and Eleventh Amendment protection must be determined on a case-by-case basis. *Sherman v. Curators of the Univ. of Mo.*, 16 F.3d 860, 862 (8th Cir. 1994).

In evaluating whether a state-connected entity is an "arm of the state" entitled to Eleventh Amendment immunity, this Court looks at factors including the degree of local autonomy and control, and most importantly, whether a judgment against the entity would be paid from the state treasury. *Sherman*, 16 F.3d at 863. Other relevant considerations may include the degree of autonomy and control the entity exercises under state law, whether it is separately incorporated and empowered to sue or be sued, and whether state or local officials appoint its governing members. *Sherman.* 16 F.3d at 865, n.6 (citing *Kovats v. Rutgers*, *The State Univ.,* 882 F.2d 1303, 1309 (3d Cir. 1987))*; Hadley v. N. Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1439 (8th Cir. 1996); *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084–85 (8th Cir. 2006). No single factor is dispositive, and the inquiry requires a case-by-case assessment of the particular institution.

Appellate Case: 25-2503    Page: 45    Date Filed: 10/09/2025 Entry ID: 5566322

*Greenwood*, 778 F.2d at 453. Applying these factors, the Curators should not be treated as an "arm of the state" for Eleventh Amendment purposes in this case.

First, and most importantly, any relief Farm Sanctuary Plaintiffs seek from the Curators is limited to declaratory and injunctive orders and does not require payment from the state treasury. Farm Sanctuary Plaintiffs seek injunctive relief to prevent continuing violation of federal law against the Curators of the University of Missouri. Specifically, Farm Sanctuary Plaintiffs seek to enjoin the University of Missouri, by and through the Curators, to comply with laws concerning disputed property interests and liens for the care of animals in Missouri. App. 141, 144, 146; R. Doc. 39, at 13, 16, 18. Farm Sanctuary Plaintiffs do not seek damages from the Curators.[6] Accordingly, the claim alleged against the Curators is the type permitted by the *Ex parte Young* doctrine. Because Farm Sanctuary Plaintiffs' claims against the Curators are limited to non-monetary relief, an award in favor of Farm Sanctuary Plaintiffs would not derive from state funds and the Curators therefore cannot share in state immunity under the Eleventh Amendment. App. 182; R. Doc. 53, at 4; *see Edelman v. Jordan*, 415 U.S. 651, 668 (1974) (finding that ancillary

---

[6]     Farm Sanctuary Plaintiffs directly conceded their claim to damages against the Curators in their opposition brief to University Defendants' motion to dismiss before the district court. App. 182; R. Doc. 53, at 4. Farm Sanctuary Plaintiffs further waive any claim to monetary damages against the Curators and only seek injunctive and declaratory relief as to the Curators.

Appellate Case: 25-2503     Page: 46     Date Filed: 10/09/2025 Entry ID: 5566322

effects on state treasuries resulting from compliance with prospective injunctive relief are permissible consequences of the *Ex parte Young* doctrine).

Second, the Curators possess significant autonomy under Missouri law. The Missouri Constitution establishes the University as a "body politic," Mo. Const. art. IV, § 9, and the legislature has granted the Curators independent corporate powers, including the authority to "sue and be sued", hold and manage property, and enter into contracts. Mo. Rev. Stat. § 172.020. These provisions demonstrate legal separation from the State itself and weigh against Eleventh Amendment Immunity. See *Hadley v. N. Ark. Cmty. Tech. Coll*., 76 F.3d 1437, 1439 (8th Cir. 1996) (considering autonomy and corporate powers as relevant to immunity).

Third, although the Governor appoints the Curators with the advice and consent of the Senate, Mo. Const. art. IX, § 9(a), this does not eliminate the Board's independent corporate identity. The Eighth Circuit has explained that the method of appointment is relevant but not dispositive, and entities with state-appointed boards may still be treated as distinct from the State. *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1084–85 (8th Cir. 2006).

Taken together, these factors demonstrate that the Curators function with sufficient independence and autonomy to fall outside the Eleventh Amendment's protections in suits limited to prospective equitable relief.

47

### B. Individual Defendants are not immune from suit under the Eleventh Amendment.

Moreover, the Eleventh Amendment does not bar claims for damages against state officials acting in their personal capacities, nor claims for prospective relief against individual defendants acting in their official capacities. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). The case of *Ex parte Young*, 209 U.S. 123 (1908), created an exception to the general rule of Eleventh Amendment immunity asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State. *Id*. at 159-60; *see also Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 531-32 (8th Cir. 2005) (recognizing *Ex parte Young* exception for suits seeking prospective relief against ongoing constitutional violations). Additionally, state officials are "persons" under § 1983 when sued for injunctive relief because such actions "are not treated as actions against the State." *Treleven v. Univ. of Minn*., 73 F.3d 816, 819 (8th Cir. 1996) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)).

Because this is precisely the type of claim that Farm Sanctuary Plaintiffs allege against Drs. Morris, Coates, and Doe (App. 133; R. Doc. 39, at 5), they are not shielded under the Eleventh Amendment.

Appellate Case: 25-2503    Page: 48    Date Filed: 10/09/2025 Entry ID: 5566322

## VIII. CONCLUSION

For the foregoing reasons, Farm Sanctuary Plaintiffs respectfully request that this Court reverse the district court's final judgment and remand for further proceedings on the merits.


Dated: October 8, 2025                    Respectfully submitted,

By:  */s/ Jessica L. Blome*
      Jessica L. Blome
      Cyrus J. Moshiri
      GREENFIRE LAW, PC
      2748 Adeline Street, Suite A
      Berkeley, CA 94703

      *Attorneys for Appellants Iowa Farm*
      *Sanctuary and Shawn Camp*

49

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Federal R. App. P. 32(f), this document contains 9,743 words, which is less than 13,000 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 Version 16.99.2 using the 14-point Times New Roman font. The brief and addendum have been scanned for viruses and the brief is virus-free.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 8, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Jessica L. Blome*
Jessica L. Blome
Greenfire Law, PC

Appellate Case: 25-2503   Page: 51   Date Filed: 10/09/2025 Entry ID: 5566322