No. 25-2503

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

**IOWA FARM SANCTUARY AND SHAWN CAMP**
**Appellants**

**v.**

**UNIVERSITY OF MISSOURI VETERINARY HEALTH CENTER,**
**By and through**
**CURATORS OF THE UNIVERSITY OF MISSOURI, COLUMBIA, ET AL.,**
**Appellees.**

On Appeal from the United States District Court
For the Western District of Missouri, Central Division
No. 2:24-cv-04141-MDH
Hon. Douglas Harpool

**Brief of Appellees**

**Wade H. Ford #18757**            **Susan Ford Robertson #35932**
**Jeffrey H. Blaylock #34151**      **The Robertson Law Group, L.L.C.**
**Ford, Parshall & Baker, LLC**     **1903 Wyandotte, Suite 200**
**3210 Bluff Creek Drive**          **Kansas City, MO 64108**
**Columbia, MO 65201**             **816-221-7010 (phone)**
**573-449-2613 (phone)**           **susanr@therobertsonlawgroup.com**
**hford@fpb-law.com**
**jblaylock@fpb-law.com**

*Attorneys for Appellees University of Missouri Veterinary Health Center, by and through Curators of the University of Missouri, Joan Coates, DVM, and Celeste Morris, DVM*

## Summary of the Case

Appellants Iowa Farm Sanctuary and its director, Shawn Camp, learned of a tractor trailer accident involving 200 sheep on Highway 61, near Troy, Missouri. The sheep were being transported to a slaughterhouse. Dozens of sheep died in the accident. Law enforcement arranged for 150 living sheep to be transported to a nearby temporary holding facility. Upon learning of the accident, several volunteers and staff of the Farm Sanctuary traveled to the accident and offered their assistance. Director Camp volunteered to transport several injured sheep from the holding facility to the University of Missouri Veterinary Health Center and paid a $1,000 deposit for anticipated medical care for the sheep. The following day, the owner of the sheep was located and authorized his sheep to be euthanized. The Veterinary Health Center tendered the deposit back to the Farm Sanctuary.

The Farm Sanctuary and director filed the underlying lawsuit claiming a lien interest pursuant to several Missouri statutes and alleged various substantive and due process violations under 42 U.S.C. §1983. The district court properly dismissed the case as any property rights to voluntarily transport and pay a deposit for medical care for several sheep were "lien" interests created and adequately remedied by Missouri statutes. In addition, Eleventh Amendment immunity bars the action. Appellees request oral argument as the dismissal and supporting reasons are important to The Curators and individual doctors. Fifteen minutes is requested.

2

# Table of Contents

Summary of the Case .................................................................................. 2

Table of Cases and Authorities ................................................................. 3

Statement of the Issues.............................................................................. 8

Statement of the Case................................................................................ 9

Summary of the Argument....................................................................... 13

Standard of review .................................................................................. 15

Argument.................................................................................................. 16

I.   The action was properly dismissed for failure to state a claim .................. 16

    A. Violations of state law do not state a claim for relief under §1983 ....... 17

    B. Missouri lien statutes provide an adequate remedy................................ 18

II.  Additional reasons supporting dismissal ...................................................... 25

    A. The Eleventh Amendment bars any claims against The Curators ......... 26

    B. The Eleventh Amendment bars any claims against the individuals....... 29

        1.  Any action against them in their official capacity fails..................... 29

        2.  Any action against them in their individual capacity fails................ 31

Conclusion ............................................................................................... 32

Certificate of Compliance ....................................................................... 34

Certificate of Service  .............................................................................. 34

Appellate Case: 25-2503     Page: 3     Date Filed: 12/11/2025 Entry ID: 5587134

# Table of Cases and Authorities

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................... 15

*Baker v. McCollan*,
443 U.S. 137 (1979)......................................................................... 23

*Brown v. Montoya*,
662 F.3d 1152 (10th Cir. 2011) ....................................................... 31

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)........................................................................... 31

*Collier v. City of Springdale*,
733 F.2d 1311 (8th Cir. 1984) ................................................... 13, 20

*Cory v. White*,
457 U.S. 85 (1982)........................................................................... 26

*Christie's Cabaret of Glendale LLC v. United National Ins. Co.*,
562 F. Supp. 3d 106 (D.C. Ariz. 2021) ........................................... 32

*Doe v. Gooden*,
214 F.3d 952 (8th Cir. 2000) ..................................................... 13, 17

*Ebmeier v. Stump*,
70 F.3d 1012 (8th Cir. 1995) ..................................................... 13, 17

*Ex parte Young*,
209 U.S. 123 (1908)......................................................................... 28

*Glick v. Western Power Sports, Inc.*,
944 F.3d 714 (8th Cir. 2019) .......................................................... 15

*Hadley v. N. Arkansas Community Technical. College*,
76 F.3d 1437 (8th Cir. 1996) .......................................................... 26

4

*Hafer v. Melo*,
502 U.S. 21 (1991)..........................................................31

*Hans v. Louisiana*, 134 U.S. 1 (1890) ..........................................26

*Harris v. Missouri Conservation Commission*,
790 F.2d 678 (8th Cir. 1986) ..........................................8, 13, 20

*Harris v. Univ. of Missouri*,
2024 WL 1636703 (E.D. Mo. Apr. 16, 2024) ..............................27

*Hershall Gill Consulting Engineers, Inc. v. Miami-Dade
County, Fla.*, 333 F. Supp. 2d 1305 (S.D. Fla. 2004 )..................32

*Hudson v. Palmer*,
468 U.S. 517 (1984)..........................................................13, 20

*Humane Soc. Of Missouri v. Boshers*,
948 S.W.2d 715 (Mo.App. 1997) ......................................8, 17

*Ingram v. Ark. Dep't of Corr.*,
91 F.4th 924 (8th Cir. 2024) ..........................................15

*Kentucky v. Graham,*
473 U.S. 159 (1985)..........................................................30

*Keselyak v. Curators of the University of Missouri*,
200 F. Supp. 3d 849 (W.D. Mo. 2016)......................................28

*Lapides v. Board of Regents of University System of Georgia*,
535 U.S. 613 (2002)..........................................................26

*Light v. Blackwell*,
472 F. Supp. 333 (E.D. Ark. 1979) ..............................22, 23

*Lors v. Dean*,
746 F.3d 857 (8th Cir. 2014) ..........................................26

Appellate Case: 25-2503    Page: 5    Date Filed: 12/11/2025 Entry ID: 5587134

*Mackey v. Camp*,
415 F. Supp. 323 (W.D. Mo. 1976)................................................8

*Monroe v. Arkansas State Univ.*,
495 F.3d 591 (8th Cir. 2007)......................................................26, 28

*Patchen v. Durrett*,
92 S.W. 721 (Mo.App. 1906) ......................................................17

*Puerto Rico Aqueduct and Sewer Authority v.
Metcalf and Eddy, Inc.*, 506 U.S. 139 (1993)...............................28

*Schanou v. Lancaster Co. School Dist. No. 160*,
62 F.3d 1040 (8th Cir. 1995) ......................................................31

S*herman v. Curators of University of Missouri*,
16 F.3d 860 (8th Cir. 1994) ........................................................27

*Sherman v Curators of Univ. Of Mo.*,
871 F. Supp. 344 (W.D. Mo. 1994).............................................27-29

*State ex rel. Zobel v. Burrell*,
167 S.W.3d 688 (Mo. banc 2005) ...............................................23, 24

*White v. Jackson*,
865 F.3d 1064 (8th Cir. 2017) ......................................................30

*Will v. Michigan Dep't of State Police*,
491 U.S. 58 (1989)......................................................................28, 30

**Statutes, Rules, and Constitutional Provisions**

Federal Rule 12(b)(6) ..................................................................9, 15

42 U.S.C. §1983..........................................................................*passim*

Mo. Const. art IX, §9 ..................................................................28, 29

Section 172.020 R.S.Mo................................................................29

Appellate Case: 25-2503     Page: 6     Date Filed: 12/11/2025 Entry ID: 5587134

Section 430.150 R.S.Mo.(1939) .................................................. 8, 18, 19

Section 430.160 R.S.Mo. (1979) ................................................. 19

Section 430.165 R.S.Mo. (1963) ............................................. 8, 19

Section 430.210 R.S.Mo. (1939) ................................................ 20

Section 430.220 R.S.Mo. (1979) ................................................ 20

Section 578.016 R.S.Mo. (1983) ................................................ 23

Appellate Case: 25-2503    Page: 7    Date Filed: 12/11/2025 Entry ID: 5587134

## Statement of Issues

The issue on appeal is whether the Farm Sanctuary's[1] 42 U.S.C. §1983 claim as pleaded in the First Amended Complaint was properly dismissed by the district court for failure to state a claim because any "property interest" in the four sheep were "lien interests" created and remedied by Missouri's statutes. The following cases and statutes are the most apposite.

*Harris v. Missouri Conservation Commission*, 790 F.2d 678 (8th Cir. 1986)

*Doe v. Gooden*, 214 F.3d 952 (8th Cir. 2000)

*Humane Soc. Of Missouri v. Boshers*, 948 S.W.2d 715 (Mo.App. 1997)

42 U.S.C. §1983

Section 430.150 R.S.Mo. (1939)

Section 430.165 R.S.Mo. (1963)

---

[1] For ease of this Court's reference, Appellants The Iowa Farm Sanctuary and Director Shawn Camp are collectively referred to as "the Farm Sanctuary" except when specific references are made to Director Camp's actions. The Appellees are referred to as "The Curators," and the "individual veterinarians." The University of Missouri Veterinary Health Center, though named in the complaint, it is not a legal entity capable of being sued as it is a department of The Curators of the University of Missouri. *Mackey v. Camp*, 415 F. Supp. 323, 324 (W.D. Mo. 1976). It is referred to as "the Veterinary Health Center."

Appellate Case: 25-2503   Page: 8   Date Filed: 12/11/2025 Entry ID: 5587134

## Statement of the Case

As the district court dismissed the action under Rule 12(b)(6), the following facts are from the First Amended Complaint.

On June 25, 2023, the Iowa Farm Sanctuary, a nonprofit, charitable organization, located in Iowa, through its volunteers and staff, and its executive director, Shawn Camp, learned of a tractor trailer accident involving 200 sheep on Highway 61, just south of Troy, Missouri. *R. Doc. 39 at 3, 5, 6; App. 131, 133, 134.*

At the time of the accident, the sheep were being transported to a slaughterhouse in Carbondale, Illinois. *R. Doc. 39 at 6; App. 134.* Dozens of sheep died in the accident. *R. Doc. 39 at 6; App. 134.*

A State Highway Patrol Officer arranged for approximately 150 living sheep to be transported to a nearby temporary holding facility. *R. Doc. 39 at 6; App. 134.* Upon learning of the accident, several volunteers and staff of the Farm Sanctuary traveled to the accident and offered their assistance. *R. Doc. 39 at 6; App. 134.* While the Farm Sanctuary volunteers and staff were talking with law enforcement, the holding facility owner called the state trooper and advised that two of the sheep were suffering from life-threatening injuries and needed to be euthanized. *R. Doc. 39 at 6; App. 134.*

Appellate Case: 25-2503    Page: 9    Date Filed: 12/11/2025 Entry ID: 5587134

The trooper informed the Farm Sanctuary they could have the sheep if they quickly picked them up from the holding facility. *R. Doc. 39 at 6; App. 134.* The Farm Sanctuary volunteers and staff called their executive director, Shawn Camp, who agreed to the surrender of the two sheep and began driving from Iowa to the holding facility. *R. Doc. 39 at 6; App. 134.*

Upon arrival, the holding facility asked Director Camp to take possession of six sheep, instead of two, for which she agreed and took the sheep to the University Veterinary Health Center and  paid a $1,000 deposit for anticipated medical care of the sheep. *R. Doc. 39 at 7; App. 135.*

Late that night, Dr. Celeste Morris contacted Director Camp to discuss possible treatment and recovery for two of the six sheep, and Director Camp authorized euthanasia for two critically injured sheep. *R. Doc. 39 at 7; App. 135.* Director Camp was advised that the four remaining sheep were great candidates for treatment and would all eventually thrive at the Farm Sanctuary. *R. Doc. 39 at 7; App. 135.*

The following day (June 26, 2023), the Veterinary Health Center contacted Director Camp and asked for an additional $500 as treatment costs had exceeded the initial deposit. *R. Doc. 39 at 8; App. 136.* Director Camp refused to pay any additional funds without an update on the status of the sheep, which the Veterinary Health Center stated it could not provide as the owner had "surfaced" and medical

10

information could not be provided to her as she was not the owner of the sheep. *R. Doc. 39 at 8, 9; App. 136, 137.* On this day, the owner instructed the Veterinary Health Center to euthanize the four remaining sheep. *R. Doc. 39 at 9; App. 137.*

On the following day (June 27, 2023), attorneys for the Farm Sanctuary informed the General Counsel's office of the University that the Farm Sanctuary intended to enforce their veterinary services lien against the owner of the sheep pursuant to Missouri state lien statutes. *R. Doc. 39 at 8; App. 136.*

On June 28, 2023, the Farm Sanctuary attempted to inspect the sheep and review medical and treatment records for the sheep, but their requests were refused. *R. Doc. 39 at 8, 9; App. 136, 137.*

On the following day (June 29, 2023), the Farm Sanctuary filed a state court action against the owner of the sheep seeking enforcement of its lien interest demanding return of the sheep through replevin. *R. Doc. 39 at 9; App. 137.* A few days later, the Farm Sanctuary was informed that the sheep had been euthanized by instruction of the owner the day following the accident. *R. Doc. 39 at 9; App. 137.*

The Farm Sanctuary dismissed the state court action and filed the underlying action against The Curators of the University of Missouri and the individual veterinarians under 42 U.S.C. §1983 seeking damages, declaratory, and injunctive relief. *R. Doc. 39 at 9, 10; App. 137, 138; R. Doc. 1; App. 1-19.*

Appellate Case: 25-2503    Page: 11    Date Filed: 12/11/2025 Entry ID: 5587134

The Curators and individual defendants filed a motion to dismiss for failure to state a claim and lack of subject matter jurisdiction. *R. Doc. 10; App. 20-23.* With permission of the district court, the Farm Sanctuary filed a First Amended Complaint, which added Dr. Celeste Morris as a defendant, but did not add any new claims. *R. Doc. 37, 39; App. 127, 128, 129-148.*

The Curators and individual defendants moved to dismiss the First Amended Complaint for multiple reasons, including failure to state a claim as the property interests were lien interests created and remedied by Missouri statutes, and the Eleventh Amendment immunity barred any claims against the defendants. *R. Doc. 49 at 2-4; App. 149-153.* On June 25, 2025, the district court issued final judgment granting the Curators and individual defendants' motion to dismiss for failure to state a claim because the property interests were lien interests created and remedied by Missouri state lien statutes. *R. Doc. 86 at 1-8; App. 213-220.*

Appellate Case: 25-2503    Page: 12    Date Filed: 12/11/2025 Entry ID: 5587134

## Summary of Argument

The Farm Sanctuary's complaints arise out of alleged violations of Missouri lien statutes. However, violations of state law do not state a claim for relief under 42 U.S.C. §1983. *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000). "Section 1983 guards and vindicates federal rights alone." *Id.* quoting *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) (violations of state law, state-agency regulations, and state-court orders, do not by themselves state a claim under 42 U.S.C. §1983).

If the state provides an adequate remedy, federal courts will not entertain jurisdiction of the case as it would constitute an unwarranted interference with state court jurisdiction and open the floodgates to a multiplicity of federal actions involving aspects of state law that should be adjudicated in state forums. *Harris v. Missouri Conservation Commission*, 790 F.2d 678, 680-81 (8th Cir. 1986) (even if the state remedies do not provide plaintiffs with the same amount of relief the might receive under a §1983 action, this does not mean the state remedies are inadequate); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (same); *Collier v. City of Springdale*, 733 F.2d 1311, 1313-14 n. 4, 1314-16 (8th Cir. 1984) (post-deprivation state remedies provided Constitutional due process in state taking case and to assume jurisdiction in a case of this type would open the floodgates to a multiplicity of federal actions involving all aspects of state eminent domain proceedings which should be adjudicated under state procedures in state forums).

In addition, though the district court did not reach the additional arguments advanced by the Curators and individual defendants, the action was also properly subject to dismissal because of the Eleventh Amendment immunity bar.

14

## Standard of Review

This Court reviews the district court's dismissal for failure to state a claim under Rule 12(b)(6) *de novo*, accepting all factual allegations as true, drawing all reasonable inferences in the nonmovant's favor. *Ingram v. Ark. Dep't of Corr.*, 91 F.4th 924, 927 (8th Cir. 2024). To survive a motion to dismiss, a complaint must allege sufficient facts "to state a facially plausible claim for relief." *Id.*, see *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Court need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts. *Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

**Argument**

**I.**     **The district court properly dismissed the §1983 action for failure to state a claim.**

Some volunteers and staff of the Farm Sanctuary learned of a highway accident involving sheep being transported for slaughter. Dozens of sheep died in the accident. Several staff members drove to the accident scene. Law enforcement had already arranged for 150 living sheep to be transported to a nearby temporary holding facility. Director Camp drove from Iowa and volunteered to help transport several injured sheep from the holding facility to the University of Missouri Veterinary Health Center for medical treatment. The Farm Sanctuary paid a $1,000 deposit to the Veterinary Health Center for anticipated medical care for four sheep. The following day, the owner of the sheep was in contact with the Veterinary Health Center and authorized his sheep to be euthanized. The Veterinary Health Center thereafter tendered the $1,000 deposit back to the Farm Sanctuary.

The Farm Sanctuary was never the owner of the four sheep. Instead, any "property interest" in the four sheep were "lien interests" created and remedied by Missouri's statutes. The district court properly dismissed the Farm Sanctuary's 42 U.S.C. §1983 action against the Curators of the University of Missouri and the individual veterinarians for failure to state a claim. The district court's judgment should be affirmed. Federal courts do not exercise §1983 jurisdiction over state claims for which the state provides an adequate remedy.

16

**A. Violations of state law do not state a claim for relief under §1983.**

Violations of state law do not state a claim for relief under 42 U.S.C. §1983. *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000). "Section 1983 guards and vindicates federal rights alone." *Id.* quoting *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995) (violations of state law, state-agency regulations, and state-court orders, do not by themselves state a claim under 42 U.S.C. §1983).

The district court's dismissal of the action on this basis was correct. Since 1866, Missouri has recognized that lien interests for those rendering services to animals are created and remedied by statutes. *Patchen v. Durrett*, 92 S.W. 721, 722 (Mo.App. 1906) (the agister's lien does not arise from common law; instead, it is of statutory creation, as is the remedy to enforce); *Humane Soc. Of Missouri v. Boshers*, 948 S.W.2d 715, 716 (Mo.App. 1997) (the lien interests regarding persons who keep or board animals is of statutory creation beginning in 1866 and recognized through every revision of the Missouri statutes, including when Missouri adopted a new constitution in 1945, and in the state's comprehensive revisions in 1986 and 1994 ).

The sheep at issue were never owned by the Farm Sanctuary. Instead, by direction of the actual owner, the sheep were in route to a slaughterhouse when the tractor trailer in which they were loaded became involved in a highway accident. The Farm Sanctuary was not contacted regarding the sheep and they were not

impounded from the highway accident scene to be placed in the care or custody of the Farm Sanctuary.

Instead, the Farm Sanctuary learned of the accident and members drove to the accident scene to volunteer their services. When they arrived, the sheep had already been transported to a temporary holding facility. When the temporary holding facility called law enforcement about two of the sheep needing to be euthanized, the Farm Sanctuary volunteered to transport the sheep from the holding facility to the University of Missouri Veterinary Health Center for treatment. Director Camp voluntarily drove from Iowa to the holding facility and transported six sheep to the Veterinary Health Center, turned over custody of the sheep, and voluntarily paid a $1,000 deposit for their care.

**B. Missouri's lien statutes provide an adequate remedy.**

Contrary to the Farm Sanctuary's assertions, there were no "competing ownership" claims or federal civil rights at issue. *Farm Sanctuary brief at 20.* The only "property interest" the Farm Sanctuary had was a *lien interest* for the $1,000 it voluntarily paid for the care of the sheep. Missouri statutes makes clear, services rendered or money paid for the care of an animal in the state of Missouri creates a *lien interest* for the value of the services rendered or money paid. The relevant statutes recognizing those lien interests are as follows:

Section 430.150 R.S.Mo. provides:

18

Every person who shall keep, board or train any horse, mule or other animal, shall, for the amount due therefor, have a lien on such animal, and on any vehicle, harness or equipment coming into his possession therewith, and no owner or claimant shall have the right to take any such property out of the custody of the person having such lien, except with his consent or on the payment of such debt; and such lien shall be valid against said property in the possession of any person receiving or purchasing it with notice of such claim.

Section 430.165 R.S.Mo. provides:

1. Any animal lawfully impounded under the laws of this state or ordinances of any of its political subdivisions may be placed by the impounding officer in the care of any incorporated humane society or other responsible person designated by the impounding authority.

2. Any incorporated humane society or other person designated to care for an animal under the provisions of subsection 1 shall be entitled to a lien on the animal for the reasonable cost of the care of the animal, as provided in sections 430.150 and 430.160.

Missouri statutes also provide remedies for enforcement of lien interests:

Section 430.160 R.S.Mo. provides:

The lien provided for in section 430.150 shall be enforced as follows: The person claiming the lien shall file in circuit court, before a circuit or associate circuit judge, in the county in which he resides, a statement duly verified by himself, his agent or attorney, setting forth his account and a description of the property on which the lien is claimed, and thereupon the court shall issue a summons, as in ordinary civil actions, returnable forthwith; and upon a return of the summons, duly served, shall set the cause for hearing at any time after the lapse of one day…When the defendant shall have been summoned or notified as aforesaid, the cause shall, on the day fixed for trial, be tried as any ordinary case before an associate circuit judge or a circuit judge, as the case may be. If the judgment be for the plaintiff, the court shall order the property upon which the lien shall have been found to exist to be sold to satisfy the same. If the lien be not established, and the defendant shall not have been summoned, or shall

Appellate Case: 25-2503    Page: 19    Date Filed: 12/11/2025 Entry ID: 5587134

not have voluntarily appeared to the action, the cause shall be
dismissed at the cost of the plaintiff.

Section 430.210 R.S.Mo. provides:

> For the purpose of enforcing such lien upon default in the payment of
> the sum secured, the lienor may proceed by replevin in any court of
> competent jurisdiction and possess himself of the encumbered
> property, and hold the same subject to such judgment as he shall
> recover.

Section 430.220 R.S.Mo. provides:

> Upon the rendition of judgment, if for the lienor, it shall be for the
> sum found to be due, with costs of suit, and that the lien be enforced
> against the property by execution and sale as in ordinary sales under
> execution, but if such finding be for defendant, judgment shall be
> entered in his favor as in ordinary actions of replevin.

Against this clear and long-standing statutory backdrop, the district court

properly dismissed the §1983 action. If the state provides an adequate remedy,

federal courts will not entertain jurisdiction of the case as it would constitute an

unwarranted interference with state court jurisdiction and open the floodgates to a

multiplicity of federal actions involving aspects of state law that should be

adjudicated in state forums. *Harris v. Missouri Conservation Commission*, 790

F.2d 678, 680-81 (8th Cir. 1986) (even if the state remedies do not provide

plaintiffs with the same amount of relief they might receive under a §1983 action,

this does not mean the state remedies are inadequate); *Hudson v. Palmer*, 468 U.S.

517, 533 (1984) (same); *Collier v. City of Springdale*, 733 F.2d 1311, 1313-14 n. 4,

1314-16 (8th Cir. 1984) (post-deprivation state remedies provided Constitutional

20

due process in state taking case and to assume jurisdiction in a case of this type would open the floodgates to a multiplicity of federal actions involving all aspects of state eminent domain proceedings which should be adjudicated under state procedures in state forums).

The Farm Sanctuary unsuccessfully tries to sidestep this protection afforded to the Curators and the individual veterinarians by a lengthy discussion of federal cases addressing when pre-deprivation and post-deprivation due process rights are implicated for "property rights." However, none of these cases are apposite. Contrary to statements made in its brief, there were never any competing "ownership" properly right interests in the sheep.[2] Instead, the only "property rights" the Farm Sanctuary had was *a lien interest* created and remedied by Missouri statutes.[3]

---

[2] The Farm Sanctuary repeatedly mischaracterizes its interest as an "ownership interest" in "its property." *Farm Sanctuary brief at 25 ("the Veterinary Health Center…seized and destroyed Farm Sanctuary property"), 31 ("the only issue is whether University Defendants owed Farm Sanctuary Plaintiff some form of procedural due process before destroying Farm Sanctuary Plaintiffs' property"), 37 ("University Defendants seize, destroy…property of the rightful owner without their consent."), 38 ("competing ownership claim").*

[3] An extended discussion of the cases cited by the Farm Sanctuary regarding procedural and substantive due process issues is unnecessary because they are based on the Farm Sanctuary's mischaracterization of its "property interest" in the four sheep as an "ownership" interest, when in fact, it was *a lien interest* for which Missouri law both created the interest and provided remedies for enforcement. Under the facts as pleaded, the Farm Sanctuary does not provide any meaningful argument as to how these statutes did not adequately provide for enforcement of its

Appellate Case: 25-2503    Page: 21    Date Filed: 12/11/2025 Entry ID: 5587134

Any claims of procedural and substantive due process rights *as a lienholder* are adequately addressed in Missouri's lien statutes. Federal courts consistently and correctly decline to exercise jurisdiction when the state recognizes and provides remedies for enforcement of the interest, which in this case, is *a lien interest* in four sheep. The Farm Sanctuary improperly attempts to elevate its lien interest to an ownership interest and asks the federal court for injunctive relief against The Curators and the veterinarians who provide treatment to animals.

> In enacting 42 U.S.C. §1983 Congress did not extend "a right to be free of injury wherever the State may be characterized as a tortfeasor…(S)uch a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

> To assume jurisdiction of this type would mean the opening of a floodgate to a multiplicity of federal actions involving all aspects of state eminent domain proceedings which in truth should be adjudicated under state procedures and in state forums.
> …
> An individual's right to have the relevant state laws strictly obeyed is not a federal right protected by the Civil Rights Act of 1871 or the Constitution of the United States. (Citing cases ) Nor does the Civil Rights Act provide a remedy for mere common law torts, even when committed "under color of state law." (Citing cases ) In construing the scope of the federal civil rights act, federal courts have been cautioned to guard against being "so overzealous in their desire to protect individual rights from State abuse that they unjustifiably deprive the States of their inherent sovereignty, also protected by the United States Constitution." *Eagan v. City of Aurora*, 174 F. Supp. 794 (N.D.Ill.1959). The protection of rights derived purely from state law and incident to state rather than federal citizenship is therefore

---

*lien interest*. To the extent the Farm Sanctuary argues these statutes do not adequately provide for injunctive relief, the Eleventh Amendment immunity bars this relief. See Section II, *infra*.

Appellate Case: 25-2503     Page: 22     Date Filed: 12/11/2025 Entry ID: 5587134

beyond the pale of both federal court jurisdiction and the substantive remedial provisions of the Civil Rights Act.

*Light v. Blackwell*, 472 F. Supp. 333, 338 (E.D. Ark. 1979). Section 1983 liability is for violations of rights protected by the Constitution, and not for violations of duties of care arising out of state tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles. *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

The Farm Sanctuary attempts to use §578.016.1(2) R.S.Mo. to claim a right to "inspect or recover" the sheep. However, this statute addresses animals that have been abused or neglected. The statute provides:

> 1. Any duly authorized public health official, law enforcement official, or animal control officer may impound any animal found outside of the owned or rented property of the owner or custodian of such animal when such animal shows evidence of neglect or abuse.

In *State ex rel. Zobel v. Burrell*, 167 S.W.3d 688, 692 (Mo. banc 2005), the Missouri Supreme Court provided guidance on Sections 578.05-18.

> However, the terms "animal neglect" and "animal abuse" are defined in section 578.009 and section 578.012. "Animal neglect" is defined as the failure "to provide adequate care or adequate control, which results in substantial harm to the animal." Section 578.009. Animal abuse occurs when an owner "knowingly fails to provide adequate care or control." Section 578.012. Furthermore, the general assembly has also defined the key terms of "adequate care" and "adequate control." "Adequate care" is defined as "normal and prudent attention to the needs of an animal, including wholesome food, clean water, shelter and health care necessary to maintain

Appellate Case: 25-2503    Page: 23    Date Filed: 12/11/2025 Entry ID: 5587134

good health in a specific species of animal." Section 578.005. "Adequate control" means to "reasonably restrain or govern an animal so that the animal does not injure itself, any person, any other animal, or property."

The facts as pleaded in the First Amended Complaint reveal the sheep were not "neglected" or "abused" as defined in the statutes. Instead, while in transport to slaughter, the tractor trailer was involved in a highway accident. The owner was located the next day and directed the sheep to be euthanized. Even if the statute was somehow implicated, the remainder of the statute provides the remedy afforded.

> 2.  Any animal impounded pursuant to this section shall be:
>
> (1) If the owner can be ascertained and the animal is not diseased or disabled beyond recovery for any useful purpose, held for recovery by the owner. The owner shall be notified within five business days of impoundment by phone or by mail of the animal's location and recovery procedures. The animal shall be held for ten business days. An animal unclaimed after ten business days may be put up for adoption or humanely killed;
>
> (2) Placed in the care or custody of a veterinarian, the appropriate animal control authority or animal shelter. The animal shall not be disposed of, unless diseased or disabled beyond recovery for any useful purpose, until after expiration of a minimum of five business days, during which time the public shall have clear access to inspect or recover the animal through time periods ordinarily accepted as usual business hours. After five business days, the animal may be put up for adoption or humanely killed; or
>
> (3) If diseased or disabled beyond recovery for any useful purpose as determined by a public health official, law enforcement official, veterinarian or animal control officer, humanely killed.
>
> 2. The owner or custodian of an animal impounded pursuant to this section shall be liable for reasonable costs for the care and maintenance of the animal. Any person incurring reasonable costs for

the care and maintenance of such animal shall have a lien against such animal until the reasonable costs have been paid and may put up for adoption or humanely kill any animal if such costs are not paid within ten days after demand. Any moneys received for an animal adopted pursuant to this subsection in excess of costs shall be paid to the owner of such animal.

3. The owner or custodian of any animal killed pursuant to this section shall be entitled to recover the actual value of the animal up to but not to exceed six hundred dollars if the owner or custodian shows that such killing was unwarranted.

The statute provides for the rights of the owner, if located, and the right of the veterinarian to euthanize, and the remedy afforded to any owner or custodian of any unwarranted killing of an animal pursuant to this statute "shall be entitled to recover the actual value of the animal up to but not to exceed six hundred dollars." The district court properly ruled that any right the Farm Sanctuary had "to the sheep, or for reimbursement for care of the sheep, originated in State law." *R. Doc. 86 at 7; App. 219.* The district court's judgment should be affirmed. Federal courts decline to exercise jurisdiction when the state provides an adequate remedy. The creation of the lien interest and the remedies for enforcement are created by state law. There are no federal constitutional rights implicated. The case was properly dismissed.

## II.     Additional reasons to support the propriety of dismissal of the action.

Though not discussed by the district court, there are additional reasons supporting dismissal of the action.

## A. Any claims against The Curators of the University of Missouri are barred by Eleventh Amendment immunity.

Sovereign immunity is a jurisdictional, threshold matter that is properly addressed under Rule 12(b)(1). *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014). In their brief, the Farm Sanctuary abandons any claim for damages against the Curators and argues the action should be allowed to proceed against the Curators for declaratory and injunctive relief.[4] *Farm Sanctuary brief at 46.* However, the action is still barred by reason of the Eleventh Amendment, which prohibits suits in federal court by citizens against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 10 (1890); *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 618 (2002).

This immunity applies to all suits against a state or state instrumentalities, whether in law or in equity, for damages or for any other relief. *Cory v. White*, 457 U.S. 85, 90-91 (1982) (by its terms, the Eleventh Amendment applies to a suit seeking an injunction); *see Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (the Eleventh Amendment bars suits against a state university for any kind of relief, not merely money damages); *Hadley v. N. Arkansas Community*

---

[4] The immunity provides protection for the state's treasury from liability that would have had essentially the same practical consequences as a judgment against the state itself. *Hadley v. N. Arkansas Community Technical. College*, 76 F.3d 1437, 1439 (8th Cir. 1996).

Appellate Case: 25-2503     Page: 26     Date Filed: 12/11/2025 Entry ID: 5587134

*Technical. College*, 76 F.3d 1437, 1438 (8th Cir. 1996) (state universities and colleges almost always enjoy Eleventh Amendment immunity).

Courts in this circuit have consistently followed the framework provided by this Court in S*herman v. Curators of University of Missouri*, 16 F.3d 860, 863 (8th Cir. 1994) in determining the University of Missouri is an arm of the state and The Curators are entitled to Eleventh Amendment immunity.[5] *Harris v. Univ. of Missouri*, No. 4:22-CV-01194-AGF, 2024 WL 1636703, at *4–5 (E.D. Mo. Apr. 16, 2024) providing a list of recent cases reaching the same result:

> *See Sherman v. Curators of the Univ. of Missouri*, 871 F. Supp. 344 (W.D. Mo. 1994) (holding that the University of Missouri is an instrumentality of the State and entitled to Eleventh Amendment immunity), *cited with approval in Scherer v. Curators of the Univ. of Missouri*, 49 F. App'x 658, 658-9 (8th Cir. 2002) (per curiam); *Ormerod v. Curators of Univ. of Missouri*, 97 F. App'x 71, 72 (8th Cir. 2005) (per curiam) (affirming Eleventh Amendment immunity for University of Missouri); *Phillips v. Univ. of Missouri*, No. 2:23-CV-00365-MDH, 2023 WL 8037921, at *3 (W.D. Mo. Nov. 20, 2023) (holding that the University of Missouri is entitled to Eleventh Amendment immunity because the Court "previously held that the University is an arm of the state and afforded the protection of the Eleventh Amendment"); *Bakhtiari v. Curators of Univ. of Missouri, P.C.*, No. 4:06-CV-01489 CEJ, 2007 WL 2080425, at *2 (E.D. Mo. July 16, 2007) (holding that "the University of Missouri remains entitled to immunity under the Eleventh Amendment"); *Bakhtiari v. Lutz*, No. 4:04-CV-01071 AGF, 2006 WL 2664383, at *11 (E.D. Mo. Sept. 15, 2006); *Swatzell*, 2017 WL 3116150, at *2-3.

---

[5] This Court explained a court must examine the amount of the university's local autonomy and control, and most importantly, whether any judgment rendered against the university would ultimately be paid from state funds. *Sherman*, 16 F.3d at 863.

Appellate Case: 25-2503     Page: 27     Date Filed: 12/11/2025 Entry ID: 5587134

There are three exceptions to Eleventh Amendment immunity, though none apply to permit the Farm Sanctuary's claims against The Curators to proceed: (1) where the state waives immunity by consenting to suit in federal court; (2) where Congress abrogates the state's immunity through valid exercise of its powers; and (3) under *Ex parte Young*, 209 U.S. 123 (1908), where the plaintiff files suit against state officials seeking prospective equitable relief for ongoing violations of federal law." *Keselyak v. Curators of the University of Missouri*, 200 F. Supp. 3d 849, 854 (W.D. Mo. 2016).

The *Ex Parte Young* exception applies only to individually named defendants in their official capacities, not The Curators because the doctrine does not extend to states or states agencies. *Monroe v. Arkansas State University*, 495 F.3d 591, 594 (8th Cir. 2007) (the doctrine does not extend states or state agencies). See also *Puerto Rico Aqueduct and Sewer Authority v. Metcalf and Eddy, Inc.*, 506 U.S. 139 (1993) (the doctrine has no application in suits against the states and their agencies.)

The Curators is not a "person" subject to suit under 42 U.S.C. §1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); The Curators is established by the Missouri Constitution and statutes as a "body politic" of the State of Missouri and is recognized as an instrumentality of the state. Mo. Const.

Appellate Case: 25-2503    Page: 28    Date Filed: 12/11/2025 Entry ID: 5587134

art IX, §9; §172.020 R.S.Mo.; *Sherman v Curators of Univ. Of Mo.*, 871 F. Supp. 344 (W.D. Mo. 1994)

In addition, the doctrine is limited to ongoing violations of federal law. The Farm Sanctuary volunteered to transport several injured sheep from the temporary holding facility to the Veterinary Health Center and voluntarily paid a $1,000 deposit for medical care for the sheep. The deposit was tendered back to the Farm Sanctuary after the owner of the sheep directed the Veterinary Health Center to euthanize the sheep on the day following the highway accident. There are no facts demonstrating any "ongoing" violations of federal law that rise to the level to defeat the Eleventh Amendment immunity bar. For this additional reason, the action was properly dismissed.

## B. The claims against the individual defendants do not survive the Eleventh Amendment immunity bar.

In its brief, the Farm Sanctuary summarily raises the issue, but in fact, it provides no factual or legal support for how the individual claims against the veterinarian doctors can proceed. *Farm Sanctuary brief at 48.* Though the district court did not reach the issue, the individual claims, whether brought in official or individual capacity, were properly dismissed.

### 1. Any claims against the individuals in their official capacity fail.

First, the Farm Sanctuary's brief fails to present any factual or legal basis supporting how any claims against the individuals in their official capacity are proper.

Second, there are no allegations in the First Amended Complaint against the individuals in their official capacity. The First Amended Complaint pleads that the individual defendants are named in their "individual capacity." *Doc. 39 at 5l App. 133.* Upon this basis alone, dismissal of any purported claims against the individual defendants in their official capacity were properly dismissed.

Third, any claims against the individuals operating in their official capacity fails because they are not "persons" under §1983. An official capacity claim against an individual employed by the state is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017); *Will v. Michigan Dept. of State Police*, 491 U.S. 58 , 71 (1989) (officials acting in their official capacities are not "persons" under §1983); *Kentucky v. Graham,* 473 U.S. 159, 165, (1985) (a suit against a public employee in his or her official capacity is merely a suit against the public employer.) As the relief sought against all defendants was "injunctive" seeking training, the claims against the doctor defendants were properly dismissed because any claims seeking injunctive relief cannot be pursued against officials acting in their individual capacity.

Appellate Case: 25-2503   Page: 30   Date Filed: 12/11/2025 Entry ID: 5587134

Fourth, the only claims that can be asserted against the individuals in their official capacity are those for injunctive relief. *Brown v. Montoya*, 662 F.3d 1152, 1161 n. 5 (10th Cir. 2011) citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991). The Farm Sanctuary does not allege any real and immediate threat of being deprived of the rights it alleges was violated in this case. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983); *Schanou v. Lancaster Co. School Dist. No. 160*, 62 F.3d 1040, 1046 (8th Cir. 1995) ("Absent specific facts demonstrating the continuing or threatened direct effect of the allegedly unconstitutional policy on his child or himself, the mere fact that [Plaintiff's] son was once a student in its school district which allows yearly Bible distribution to fifth grade students after school does not confer standing upon [Plaintiff] to seek damages under §1983).

## 2. Any claims against the individuals in their individual capacity fail.

First, the Farm Sanctuary's brief fails to present any factual or legal basis supporting how any claims against the individuals in their individual capacity are proper.

Second, any claims against the veterinary doctors in their individual capacity were also properly dismissed. The Farm Sanctuary does not plead facts supporting any claim for monetary damages, other than the "lien interest" expenses that are recoverable pursuant to Missouri's lien statutes.

Appellate Case: 25-2503     Page: 31     Date Filed: 12/11/2025 Entry ID: 5587134

Third, a corporation cannot recover emotional distress damages because "a corporation lacks the cognizant ability to experience emotions." *Christie's Cabaret of Glendale LLC v. United National Ins. Co.*, 562 F. Supp. 3d 106, 122-23 (D.C. Ariz. 2021); *Hershall Gill Consulting Engineers, Inc. v. Miami-Dade County, Fla.*, 333 F. Supp. 2d 1305 (S.D. Fla. 2004 ) ( corporate entitles cannot recover emotional distress damages in §1983 actions).

Fourth, any claim for "emotional distress" suffered by Shawn Camp fails. Shawn Camp's individual rights were not violated. The allegations of civil rights violated pertain to the "property interest" in the sheep. Any claims by Shawn Camp regarding her "emotional distress" over the sheep is derivative from that of the Farm Sanctuary's alleged property interest. She has no separate legal claim. *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 729 (8th Cir. 2011); see also *Potthoff v. Morin*, 245 F.3d 710, 717 98th Cir. 2001). The First Amended Complaint alleges the sheep were surrendered by law enforcement "to the Sanctuary" and not Shawn Camp. *R. Doc. 39 at ¶19; App. 91.* In fact, all allegations pleaded the actions of "Director Camp." *R. Doc. 39 at ¶¶4, 19, 22, 23, 24, 25-30, 40. 41; App at 92-95.*

## Conclusion

Wherefore, for the above reasons, Appellees University of Missouri Veterinary Health Center, by and through Curators of the University of Missouri,

Joan Coates, DVM, and Celeste Morris, DVM, move this Court to affirm the district court's judgment dismissing the underlying action and for whatever further relief this Court deems fair and just.

/s/ Susan Ford Robertson
Susan Ford Robertson #35932
The Robertson Law Group
1903 Wyandotte, Suite 200
Kansas City, MO 64108
816-221-7010 (phone)
susanr@therobertsonlawgroup.com

Wade H. Ford #18757
Jeffrey H. Blaylock #34151
Ford, Parshall & Baker, LLC
3210 Bluff Creek Drive
Columbia, MO 65201
573-449-2613 (phone)
hford@fpb-law.com
jblaylock@fpb-law.com

*Attorneys for Appellees University of Missouri Veterinary Health Center, by and through Curators of the University of Missouri, Joan Coates, DVM, and Celeste Morris, DVM*

33

**Certificate of Compliance**

This document complies with the word limit of Federal R. App. P. 32(a)(7)(B)  because, excluding the parts of the document exempted by Rule 32(f), this document contains 6,325 words. This document complies with the typeface required of Fed. R.App. 32(a)(5), and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 Version 2510 using 14-point Times New Roman font. The brief has been scanned for viruses and the brief is virus-free.

**Certificate of Service**

The undersigned hereby certifies that on December 10, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Susan Robertson
Susan Robertson

Appellate Case: 25-2503    Page: 34    Date Filed: 12/11/2025 Entry ID: 5587134