No. 25-2503

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT**

---

IOWA FARM SANCTUARY AND SHAWN CAMP

*Appellants*

v.

UNIVERSITY OF MISSOURI VETERINARY HEALTH CENTER,
by and through
CURATORS OF THE UNIVERSITY OF MISSOURI, COLUMBIA, ET AL.

*Appellees*

On Appeal from the United States District Court
for the Western District of Missouri, Central Division
No. 2:24-cv-04141-MDH
Hon. Douglas Harpool

---

**APPELLANTS' REPLY BRIEF**

---

*Jessica L. Blome
Cyrus J. Moshiri
Greenfire Law, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
cmoshiri@greenfirelaw.com

*Attorneys for Appellants Iowa Farm Sanctuary and Shawn Camp*

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................7

II.  ARGUMENT ....................................................................................9

   A.   Farm Sanctuary Plaintiffs' lien interest is a property interest that invokes Fourth and Fourteenth Amendment protections. ......................9

      1.   Farm Sanctuary Plaintiffs had a valid lien interest in the sheep. ..................................................................................10

      2.   Lien interests are property interests protected under the Fourteenth Amendment. ............................................................11

      3.   Lien interests are property interests protected under the Fourth Amendment............................................................................14

      4.   University Defendants' principal authorities do not support dismissal. ...............................................................................16

   B.   Missouri's lien statutes do not provide an adequate remedy for Farm Sanctuary Plaintiffs' constitutional injuries.................................17

      1.   Missouri lien statutes presuppose the property exists and cannot remedy permanent destruction. .......................................17

      2.   *Parratt-Hudson* is inapplicable to a foreseeable deprivation. ....19

      3.   University Defendants' "floodgates" rhetoric is a red herring under *Parratt-Hudson's* limits and *Logan/Zinermon's* clarification of when federal remedies are available..................................................................20

   C.   The Eleventh Amendment does not bar Farm Sanctuary Plaintiffs' claims. ..................................................................22

      1.   Farm Sanctuary Plaintiffs sufficiently plead official-capacity claims for prospective relief against Individual Defendants...................................................................23

      2.   Personal-capacity claims against Individual Defendants are not barred...............................................................................26

      3.   Dismissal is not justified even if the Curators claim immunity...............................................................................28

III. CONCLUSION ...............................................................................30

Appellate Case: 25-2503     Page: 2     Date Filed: 02/03/2026 Entry ID: 5603918

**TABLE OF AUTHORITIES**

**Cases**

*Andrews v. City of W. Branch*,
  454 F.3d 914 (8th Cir. 2006)..............................................................15

*Armendari v. Rovney*,
  575 F.Supp.3d 1131 (D. Minn. 2021) ................................................14

*Bankers Union Life Ins. Co. v. Floy Hanks & Mistwood*, Inc.,
  654 S.W.2d 888 (Mo. 1983).............................................................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)..........................................................................27

*Board of Regents v. Roth*,
  408 U.S. 564 (1972)..............................................................11, 12, 13

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009)......................................................24, 27

*Carey v. Piphus*,
  435 U.S. 247 (1977)..........................................................................27

*Carolan v. Kansas City, Mo.*,
  813 F.2d 178 (8th Cir. 1987)............................................................11

*Coleman v. Reed*,
  147 F.3d 751 (8th Cir. 1998)............................................................13

*Collier v. City of Springdale*,
  733 F.2d 1311 (8th Cir. 1984).....................................................21, 22

*Craft v. Wipf*,
  836 F.2d 412 (8th Cir. 1987)............................................................13

*Doe v. Gooden*,
  214 F.3d 952 (8th Cir. 2000)............................................................16

*Ebmeier v. Stump*,
  70 F.3d 1012 (8th Cir. 1995)............................................................16

*Egerdahl v. Hibbing Comm. College*,
  72 F.3d 615 (8th Cir. 1995)..............................................................24

*Enterprise Bank v. Magna Bank*,
  894 F.Supp. 1337 (E.D. Mo. 1995)...................................................13

3

*Ex parte Young*,
    209 U.S. 123 (1908)...........................................................................................23, 29

*Fergin v. Westrock.,*
    955 F.3d 725 (8th Cir. 2020)..............................................................................26

*Fuentes v. Shevin*,
    407 U.S. 67 (1972)..........................................................................................12, 13

*Gentry v. City of Lee's Summit*,
    10 F.3d 1340 (8th Cir. 1993)...............................................................................13

*Graham v. Baughman*,
    772 F.2d 441 (8th Cir. 1985)..............................................................................27

*Greenwood v. Ross*,
    778 F.2d 448 (8th Cir. 1985)..............................................................................29

*Hafer v. Melo*,
    502 U.S. 21 (1991)............................................................................................28

*Hansen v. Black*,
    872 F.3d 554 (8th Cir. 2017)..............................................................................15

*Harris v. Missouri Conservation Commission*,
    790 F.2d 678 (8th Cir. 1986)..............................................................................21

*Heartland Acad. Cmty. Church v. Waddle*,
    427 F.3d 525 (8th Cir. 2005)..........................................................................23, 29

*Hudson v. Palmer*,
    468 U.S. 517 (1984)..........................................................................................21

*Huizenga v. Indep. Sch. Dist. No. 11*,
    149 F.4th 990 (8th Cir. 2025).................................................................26, 28, 30

*Humane Soc. of Missouri v. Boshers*,
    948 S.W.2d 715 (Mo. App. 1997).........................................................................17

*Kentucky v. Graham*,
    473 U.S. 159 (1985)..........................................................................................25

*Logan v. Zimmerman Brush Co.*,
     455 U.S. 422 (1981)..................................................................................17, 20, 21

*McDonald v. City of St. Paul*,
    679 F.3d 698 (8th Cir. 2012)..............................................................................13

*McDonough v. Anoka Cnty.*,
    799 F.3d 931 (8th Cir. 2015)..............................................................................10

4

*Memphis Light, Gas & Water Div. v. Craft*,
    436 U.S. 1 (1978)...................................................................................12

*Monroe v. Pape*,
    365 U.S. 167 (1961).............................................................................19

*Murphy v. State of Arkansas*,
    127 F.3d 750 (8th Cir. 1997)...................................................23, 26, 28

*Neitzke v. Williams*,
    490 U.S. 319 (1989).............................................................................26

*P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993).............................................................................29

*Parratt v. Taylor*,
    451 U.S. 527 (1981).............................................................................21

*Perry v. Sinderman*,
    408 U.S. 593 (1972).............................................................................12

*Raymond v. Bd. of Regents of the Univ. of Minn.*,
    140 F. Supp.3d 807 (D. Minn. 2015) ..................................................23

*Scheuer v. Rhodes*,
    416 U.S. 232 (1974).............................................................................26

*Schueller v. Goddard*,
    631 F.3d 460 (8th Cir. 2011) .........................................................12, 13

*Sherman v. Curators of the Univ. of Mo.*,
    16 F.3d 860 (8th Cir. 1994)..................................................................29

*Sherman v. Curators of the Univ. of Mo.*,
    871 F.Supp.344 (W.D. Mo. 1994)........................................................29

*Soldal v. Cook Cnty.*,
    506 U.S. 56 (1992)...............................................................................15

*Stevens v. McHan*,
    3 F.3d 1204 (8th Cir. 1993)..................................................................27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).............................................................................24

*Treleven v. Univ. of Minn.*,
    73 F.3d 816 (8th Cir. 1996).............................................................23, 25

*United States v. Jacobsen*,
    466 U.S. 109 (1984).......................................................................14, 15

5

*Verba v. Ohio Cas. Ins. Co.*,
  851 F.2d 811 (6th Cir. 1988) ...................................................................14

*Walters v. Wolf*, 660
  F.3d 307 (8th Cir. 2011) ........................................................................20

*Whitney v. Guys, Inc.*,
  700 F.3d 1118 (8th Cir. 2012) ...............................................................27

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ...........................................................................23, 25

*Zinermon v. Burch*,
  494 U.S. 113 (1990) .....................................................................passim

**Statutes**

42 U.S.C. § 1983 ...................................................................................14

Mo. Rev. Stat. § 430.150 ..........................................................10, 13, 15

Mo. Rev. Stat. § 430.165 ................................................................10, 11

Mo. Rev. Stat. § 430.210 ...................................................................18

Mo. Rev. Stat. § 430.220 ...................................................................18

Mo. Rev. Stat. § 578.016 ................................................................10, 11

Appellate Case: 25-2503    Page: 6    Date Filed: 02/03/2026 Entry ID: 5603918

## I. INTRODUCTION

The heart of this appeal is whether due process allows a veterinary clinic at a public university to destroy an animal first and ask questions later. Farm Sanctuary Plaintiffs allege that University Defendants unlawfully extinguished their property interest by killing four healthy sheep without providing any predeprivation notice or meaningful opportunity to be heard even though such process was feasible. *See* Farm Sanctuary Plaintiffs' brief at 26, 31-43; *Zinermon v. Burch*, 494 U.S. 113, 132 (1990) (where a state actor can feasibly provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation remedy); Farm Sanctuary Plaintiffs' property interests are *independently* protected under the Fourth and Fourteenth Amendments. University Defendants violated those rights when they killed the sheep, then caused and exacerbated Plaintiff Shawn Camp's extreme emotional distress by refusing to speak with her, her attorney, or her staff about the condition of the sheep for eight agonizing days.

University Defendants' opposition fails to respond to these points entirely. Instead, University Defendants attempt to reduce this case to a routine lien dispute and urge this Court to carve out an exception to due process any time state law supplies remedies to enforce a property lien through replevin or by sale. University Defendants' brief at 16-25. The fundamental flaws with University Defendants'

7

argument are clear: repossession or sale are not remedies that address the failure to provide notice, nor can they be enforced with respect to an animal that has already been killed without notice.

Because they must, University Defendants concede that Farm Sanctuary Plaintiffs' lien interest is a valid property interest,[1] but at the same time they argue—without *any* legal support—that Plaintiffs' property lien was somehow insufficient to merit due process protection. University Defendants' brief at 21. Although state law creates the lien interest, once conferred, a lien is "property" protected by the Federal Due Process Clause, and the United States Constitution dictates the minimum process required before the property can be destroyed.

University Defendants also argue that the Eleventh Amendment serves as a jurisdictional bar to Plaintiffs' entire action, but the Eleventh Amendment does not preclude claims for prospective injunctive relief as to Individual Defendants sued in their official capacities, as Plaintiffs have done here. Nor does the Eleventh Amendment bar damages claims against Individual Defendants sued in their personal capacities, as Plaintiffs have done here. Farm Sanctuary Plaintiffs allege that they suffered compensable injuries because of University Defendants'

---

[1]     University Defendants' brief at 16 ("…any 'property interest' in the four sheep were 'lien interests…'"), 18 ("The only 'property interest' the Farm Sanctuary had was a lien interest…"), 21 ("…Farm Sanctuary's mischaracterization of its 'property interest' in the four sheep as an 'ownership' interest, when in fact, it was a lien interest…").

8

constitutional violations. Compensatory damages, including for distress, are available for due process injuries, and Farm Sanctuary Plaintiffs need not formally quantify damages at the pleading stage. On a motion to dismiss, Plaintiffs' factual allegations and inferences must be credited.

University Defendants' arguments provide no basis to affirm the district court. This Court should reverse and remand for further proceedings on the merits of Farm Sanctuary Plaintiffs' constitutional claims.

## II. ARGUMENT

### A. Farm Sanctuary Plaintiffs' lien interest is a property interest that invokes Fourth and Fourteenth Amendment protections.

University Defendants' response is fatally premised on a fundamental mischaracterization of the claims at issue. Farm Sanctuary Plaintiffs allege due process claims under the Fourteenth Amendment and improper seizure under the Fourth Amendment arising from University Defendants' deprivation of their property interest. Farm Sanctuary Plaintiffs' claims are implicated independently and regardless of Missouri's state lien statutes based on the unique circumstances at issue. University Defendants' attempt to reduce Farm Sanctuary Plaintiffs' federal claims to a lien dispute collapses under the facts and the governing legal framework.

9

### 1. Farm Sanctuary Plaintiffs had a valid lien interest in the sheep.

At the motion to dismiss stage, all allegations in a complaint are accepted as true and construed in favor of the plaintiff. *McDonough v. Anoka Cnty.*, 799 F.3d 931, 945 (8th Cir. 2015). On June 25, 2023, a Missouri State Highway Patrol Trooper lawfully impounded the sheep and placed them in Farm Sanctuary Plaintiffs' custody because the sheep appeared to be neglected after surviving a freeway tractor-trailer collision. App 133-34, 138; R. Doc. 39, at 5-6, 10; *see* Mo. Rev. Stat. §§ 430.165, 578.016. On June 25, 2023, Ms. Camp accepted custody of the sheep, transported the sheep to University Defendants' Veterinary Center, paid a one thousand dollar deposit for veterinary services, consulted extensively with Dr. Morris and Dr. Archer regarding the disposition and treatment of the sheep, authorized and consented to the euthanasia of two critically injured sheep, and was assured that the four surviving sheep would be good candidates for veterinary treatment and would "thrive" at IFS. App. 135; R. Doc. 39, at 7; *see* Mo. Rev. Stat. §§ 430.150, 430.165. Based on these facts, Farm Sanctuary Plaintiffs held a valid property interest in the sheep in the form of a lien under Missouri state law. App. 139; R. Doc. 39, at 11; *see* Mo. Rev. Stat. §§ 430.150, 430.160, 430.165, 578.016.

University Defendants unsuccessfully try to discredit the factual allegations in the First Amended Complaint that a law enforcement officer impounded the sheep and placed them in Farm Sanctuary Plaintiffs' custody because the sheep

appeared to be neglected at that time. App. 133-34; R. Doc. 39, at 5-6, 10; see Mo. Rev. Stat. §§ 430.165, 578.016. University Defendants insist on their own retelling that the sheep were not impounded by law enforcement to be placed in the custody of Farm Sanctuary Plaintiffs, University Defendants' brief at 17-18, and the sheep were in fact not neglected or abused, University Defendants' brief at 24. But this Court must accept, and the district court did accept, the allegations that the Missouri Revised Statutes granted Farm Sanctuary Plaintiff's lien rights as to the sheep, App. 219; R. Doc. 86, at 7, including under the impoundment statement. *Id*. University Defendants repeatedly contradict themselves by admitting Farm Sanctuary Plaintiffs had a lien interest, and thus a property interest, in the sheep. University Defendants' brief at 18, 21. For the purposes of this appeal, this Court should accept Farm Sanctuary Plaintiffs' property interest in the sheep as undisputed.

> **2.      Lien interests are property interests protected under the Fourteenth Amendment.**

Analysis of either a procedural or substantive due process claim must begin with an examination of the interest allegedly violated. *Carolan v. Kansas City, Mo.,* 813 F.2d 178, 181 (8th Cir. 1987). It is well settled that property interests are created by state law. *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972) (property interests are created and their dimensions are defined by independent sources such as state law). "Although the underlying substantive interest is created by 'an

11

independent source such as state law,' federal constitutional law determines whether that interest rises to the level of 'legitimate claim of entitlement' protected by the Due Process Clause." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (citing *Roth*, 408 U.S. at 577, *Perry v. Sindermann*, 408 U.S. 593, 602 (1972)); *see also Schueller v. Goddard*, 631 F.3d 460, 462-63 (8th Cir. 2011) ("A protected property interest exists where a plaintiff has a legitimate claim of entitlement to a benefit that is derived from a source such as state law.") The answer to that inquiry is clear. Even while University Defendants repeatedly insist Farm Sanctuary Plaintiff's lien interests do not warrant due process protection, "[the] Fourteenth Amendment's protection of 'property'…has never been interpreted to safeguard only the rights of undisputed ownership." *Fuentes v. Shevin*, 407 U.S. 67, 86 (1972).

Contrary to University Defendants' insistence that only "ownership" triggers constitutional protection,[2] the Eighth Circuit recognizes a wide range of non-ownership, state-created property interests. Indeed, this Circuit has extended due process protection to leaseholds, employment entitlements, and statutory benefits, none of which involve traditional notions of "ownership." *See Gentry v. City of*

---

[2]    Based on this flawed assumption, University Defendants refuse to confront authorities cited by Farm Sanctuary Plaintiffs, including *Parratt* and its progeny, that control the application of procedural and substantive due process when state-authorized deprivation is predictable and predeprivation process is feasible. *See* University Defendants' brief at 16, 21.

Appellate Case: 25-2503    Page: 12    Date Filed: 02/03/2026 Entry ID: 5603918

*Lee's Summit*, 10 F.3d 1340, 1344-45 (8th Cir. 1993) (leasehold interest protected); *see also Coleman v. Reed*, 147 F.3d 751, 754 (8th Cir. 1998) (employment entitlement protected); *see also Schueller*, 631 F.3d at 462-63 (statutory entitlement protected). Property interests "are not created by the Constitution" but once defined by state law, they are protected by federal due process. *McDonald v. City of St. Paul*, 679 F.3d 698, 704 (8th Cir. 2012). Similarly, a state-created entitlement may be considered constitutionally protected property where statutes or regulations place "substantive limits" on the exercise of official discretion. *Craft v. Wipf*, 836 F.2d 412, 417 (8th Cir. 1987). Here, Missouri state law imposes such limits by prohibiting removal of the animal from the lienholder's physical custody absent payment or consent. Mo. Rev. Stat. § 430.150.

Lien interests, like the interest conferred to Farm Sanctuary Plaintiffs, fit squarely within this framework. The Due Process Clause is a safeguard of the security of interests that a person has already acquired. *Roth*, 408 U.S. at 576 *see also Fuentes*, 407 U.S. 84 (holding that plaintiffs had a protected interest in chattels they possessed). In *Enterprise Bank v. Magna Bank*, the court treated the plaintiff's lien interest as a protected property right—an "already acquired" interest—such that any state-sanctioned extinguishment of that interest triggered the Fourteenth Amendment's protection. *See Enterprise Bank v. Magna Bank*, 894 F.Supp. 1337, 1343 (E.D. Mo. 1995)

13

("Enterprise correctly points out that a lien is a property interest protected by the Due Process Clause of the Fourteenth Amendment"); *see also Verba v. Ohio Cas. Ins. Co.*, 851 F.2d 811, 814-15 (6th Cir. 1988) (judgment creditor's specific judicial lien is property interest protected by Due Process Clause); *Bankers Union Life Ins. Co. v. Floy Hanks & Mistwood*, Inc., 654 S.W.2d 888, 889 (Mo. 1983) (lien held by virtue of deed of trust is property protected by Due Process Clause).

In this case, University Defendants concede that Farm Sanctuary Plaintiffs had property rights to the sheep through a state-law created lien interest and do not dispute Farm Sanctuary Plaintiffs' custody over the sheep. *See* University Defendants' brief at 18, 21. Farm Sanctuary Plaintiffs' lien interest is therefore protected under the Due Process Clause, and on this ground, Farm Sanctuary Plaintiffs properly stated their federal claims under 42 U.S.C. § 1983. *See Armendari v. Rovney*, 575 F.Supp.3d 1131, 1134 (D. Minn. 2021) (Due Process Clause protects not only the interests of the owners of property but also the interests of the possessors of property).

### 3. Lien interests are property interests protected under the Fourth Amendment.

A "seizure" under the Fourth Amendment occurs when the government meaningfully interferes with a person's possessory interests in property. *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Soldal v. Cook Cnty.,* 506 U.S. 56,

Appellate Case: 25-2503    Page: 14    Date Filed: 02/03/2026 Entry ID: 5603918

61-62 (1992). Animals are property for Fourth Amendment purposes, and killing an animal may constitute a seizure. *Andrews v. City of W. Branch*, 454 F.3d 914, 918 (8th Cir. 2006) (plaintiff's dog treated as property under the Fourth Amendment); *Hansen v. Black*, 872 F.3d 554, 558 (8th Cir. 2017) (same). Here, Missouri state law gave Farm Sanctuary Plaintiffs a present, enforceable right to retain the sheep in their physical custody, providing that "no owner or claimant shall have the right to take any such property out of the custody of the person having such lien except with his consent or on the payment of such debt." Mo. Rev. Stat. § 430.150. University Defendants' decision to euthanize the sheep was not merely an injury to a lien, but a final, physical deprivation of the very property to which Farm Sanctuary Plaintiffs' lien attached and in which Plaintiffs held a recognized possessory stake.

University Defendants' opposition never confronts this Fourth Amendment framework. University Defendants' opposition is organized around the theory that there are no federal constitutional rights implicated because Missouri lien statutes provide an adequate remedy. But a Fourth Amendment violation is not defeated by labeling the interest as a lien nor by pointing to post hoc state remedies. The Fourth Amendment instead turns on whether government actors unreasonably seized and destroyed property in which the plaintiff had a possessory stake. *Soldal*, 506 U.S. at 61-62; *Jacobsen*, 466 U.S. at 113. Moreover, a plaintiff may bring a § 1983

15

action for unlawful seizure notwithstanding that the seizure may have violated the state's statutes. *Zinermon*, 494 U.S. at 124-25. Farm Sanctuary adequately alleged University Defendants' seizure and destruction of the sheep violated rights secured by the Fourth Amendment and therefore is not barred by the existence of state remedies. Farm Sanctuary Plaintiffs' brief at 43; App. 140, 145; R. Doc. 39, at 12, 17.

### 4. University Defendants' principal authorities do not support dismissal.

University Defendants cite to several cases for the proposition that Farm Sanctuary Plaintiffs' claims only amount to state lien claims and therefore do not state a claim for relief under § 1983. University Defendants' brief at 17. None of those cases are apposite. In *Doe v. Gooden*, the plaintiffs alleged that school officials failed to comply with an Arkansas mandatory-reporting statute. *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000). This Court found that the alleged failure to follow *state* law, without more, does not rise to unconstitutional misconduct. *Id.* Similarly, *Ebmeier* involved alleged violations of state regulations with no independent constitutional deprivation. *Ebmeier v. Stump*, 70 F.3d 1012 (8th Cir. 1995) (state defendants allegedly failed to comply with duties imposed under the Nebraska Department of Social Services).

Farm Sanctuary Plaintiffs do not allege that their injury results from University Defendants' violation of Missouri law. By contrast, the property

Appellate Case: 25-2503   Page: 16   Date Filed: 02/03/2026 Entry ID: 5603918

deprivation itself— University Defendants' destruction of property without due process—is a purely constitutional matter. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 432 (1981) ("[B]ecause 'minimum [procedural] requirements [are] a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate for determining the preconditions to adverse official action…any other conclusion would allow the State to destroy at will virtually any state-created property interest.") At most, University Defendants' cited authorities establish only what the parties already concede: Missouri law defines lien interests.[3] They do not address the constitutional claims presented by Farm Sanctuary Plaintiffs and therefore do not support dismissal.

### B. Missouri's lien statutes do not provide an adequate remedy for Farm Sanctuary Plaintiffs' constitutional injuries.

#### 1. Missouri lien statutes presuppose the property exists and cannot remedy permanent destruction.

To determine whether a constitutional violation has occurred, it is necessary to ask whether the process the state provided was constitutionally adequate. *Zinermon*, 494 U.S. at 126. "This inquiry should examine procedural safeguards

---

[3] Defendants cite to *Humane Soc. of Missouri v. Boshers*, 948 S.W.2d 715 (Mo. App. 1997). This case stands for the proposition that liens for animal care are creations of statue under Missouri law and says nothing about whether Defendants may extinguish such liens without notice or hearing.

built into the statutory procedure of effecting the deprivation and any remedies for erroneous deprivations provided by statute." *Id*. Missouri's lien enforcement statutes do not supply an "adequate" remedy for what is alleged here because the statutes presuppose the continued existence of the property at issue.

University Defendants' own discussion of § 430.160 through § 430.220 underscores this point. Those sections contemplate that the lienor may "proceed by replevin" to "possess himself of the encumbered property," and upon judgment, enforce the lien "against the property by execution and sale" or seek a court order for the property to "be sold to satisfy [the lien]." University Defendants' brief at 19-20 ("Missouri statutes also provide remedies for enforcement of lien interests"); Mo. Rev. Stat. §§ 430.160, 430.210, 430.220. But euthanasia is a permanent, physical deprivation of the property interest. In other words, once University officials destroyed the sheep, no statutory replevin,[4] levy, or sale could restore the lienor's interest or provide the process due *before* the deprivation occurred. This structural incompatibility cannot be cured by recasting the dispute as an after-the-fact billing disagreement or simple refund issue. The constitutional injury alleged is the University Defendants' permanent destruction of protected property without any notice to the lienholder. *See* Farm Sanctuary Plaintiffs' brief at 35-37. The lien

---

[4]    Plaintiffs, prior to initiating the instant lawsuit, filed a lawsuit for replevin against the putative owner of the sheep but dismissed this lawsuit immediately upon learning that Defendants had already killed the sheep.

statutes therefore do not provide adequate postdeprivation remedies for an

irreversible deprivation that extinguished the lien's res and eliminated any

opportunity for predeprivation process.

## 2. *Parratt-Hudson* is inapplicable to a foreseeable deprivation.[5]

University Defendants argue that Missouri's lien statutes supply "adequate"

postdeprivation remedies barring relief under § 1983. But § 1983 was enacted

precisely to provide a federal remedy for constitutional violations. Under certain

circumstances, "it is no answer that the State has a law which if enforced would

give relief"—the federal remedy is "supplementary" and the state remedy "need

not be first sought before the federal one is invoked." *Zinermon*, 494 U.S. at 124

(quoting *Monroe v. Pape*, 365 U.S. 167, 183 (1961)); Farm Sanctuary Plaintiffs'

brief at 21.

University Defendants' argument is, in substance, a *Parratt-Hudson*

argument, and Defendants' actions fail this important test if the doctrine is stated

correctly and applied to the allegations in this case. *Parratt* and *Hudson* are narrow

cases that hold due process is satisfied when postdeprivation remedies suffice, but

the doctrine only applies when the loss a state actor, through a random and

unauthorized act, causes a loss the State could not practicably anticipate or prevent

---

[5] To avoid restating the arguments made in their opening brief, Farm
Sanctuary Plaintiffs provide a summary of the material points and authorities
rebutting University Defendants' opposition.

Appellate Case: 25-2503     Page: 19     Date Filed: 02/03/2026 Entry ID: 5603918

with predeprivation process. Farm Sanctuary Plaintiffs' brief at 32-34 (discussing the "random and unauthorized" limitation); *see also Zinermon*, 494 U.S. at 136-38 (*Parratt-Hudson* inapplicable where deprivation is foreseeable such that predeprivation process is practicable); *see also Logan*, 455 U.S. at 436 (distinguishing *Parratt* where plaintiff challenges the established state procedure that destroys entitlement). Farm Sanctuary Plaintiffs, by contrast, suffered a deprivation University Defendants not only predicted, but planned; as such, Plaintiffs suffered from a state-authorized deprivation, and *Parratt-Hudson* does not apply. Farm Sanctuary Plaintiffs' brief at 35-37; *Walters v. Wolf*, 660 F.3d 307, 313-14 (8th Cir. 2011) (postdeprivation remedies are relevant only where the challenged action can be characterized as random and unauthorized).

### 3.  University Defendants' "floodgates" rhetoric is a red herring under *Parratt-Hudson's* limits and *Logan/Zinermon's* clarification of when federal remedies are available.

University Defendants argue that whenever a state remedy exists, federal courts should not entertain jurisdiction lest they interfere with state forums. University Defendants' brief at 13, 20. But this argument disregards the limitations imposed by *Zinermon* and *Logan* on the *Parratt-Hudson* doctrine. Far from "opening the floodgates," *Parratt-Hudson* already closed them by barring § 1983 due process claims where the challenged deprivation is (1) random and unauthorized, and (2) the State provides an adequate postdeprivation remedy.

Appellate Case: 25-2503     Page: 20     Date Filed: 02/03/2026 Entry ID: 5603918

*Logan* and *Zinermon* in turn constrain *Parratt-Hudson*'s reach by requiring federal adjudication *only* where the deprivation is state-authorized, foreseeable under established procedures, and predeprivation process is practicable. *See Zinermon*, 494 U.S. at 128-32 (cabining *Parratt-Hudson* to random, unauthorized acts and rejecting use of state remedies as an exhaustion bar); *Logan*, 455 U.S. at 435-37 (*Parratt* inapplicable where deprivation results from established state procedures); *see also Parratt v. Taylor*, 451 U.S. 527, 541-43 (1981); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Therefore, the Supreme Court's framework leaves a limited pathway for federal review where postdeprivation remedies cannot meaningfully supply the process that was due before the loss.

Defendants' "floodgates" rhetoric rests on *Harris v. Missouri Conservation Commission*, 790 F.2d 678 (8th Cir. 1986) and *Collier v. City of Springdale*, 733 F.2d 1311 (8th Cir. 1984). Both cases are materially distinguishable from this case. *Collier* and *Harris* involved condemnation of private land where the state properly exercised its sovereign power of eminent domain. In each case, the plaintiffs had available postdeprivation state remedies at the time and even after the taking that would have fully compensated their loss and satisfy requirements of due process. *Harris*, 790 F.2d at 681 (plaintiffs could have requested state judicial review which would compel return of the property or could bring an inverse condemnation

Appellate Case: 25-2503   Page: 21   Date Filed: 02/03/2026 Entry ID: 5603918

action); *Collier*, 733 F.2d at 1316 (plaintiff could have sought prospective injunctive relief in Arkansas state court).

This case did not involve the state exercising its sovereign powers in the taking of property where alternative compensation mechanisms were available. Nor do adequate post hoc remedies exist under Missouri lien statutes because University Defendants totally and permanently destroyed the sheep. Unlike the plaintiffs in *Collier* and *Harris*, Farm Sanctuary Plaintiffs challenge Missouri's lien statutes as inadequate remedies for the due process violations alleged here: the lien-enforcement mechanisms they provide (e.g., replevin or sale) do not supply a meaningful remedy once the property has been destroyed, and they furnish neither a cause of action for due process injuries nor prospective relief to prevent recurrence. Additionally, both *Collier* and *Harris* were decided years before *Zinermon* and thus before the Supreme Court clarified and narrowed the *Parratt-Hudson* analysis, making them ineffective vehicles for the expansive state-remedy bar University Defendants propose.

### C. The Eleventh Amendment does not bar Farm Sanctuary Plaintiffs' claims.

The Eleventh Amendment does not dispose of this case because Farm Sanctuary Plaintiffs plead personal-capacity damages claims against the Individual Defendants and official-capacity claims against the Individual Defendants and the Curators seeking prospective injunctive relief to prevent recurring constitutional

22

violations. *See Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). At minimum, this Court should decline to affirm the district court's judgment on Eleventh Amendment grounds, because the district court did not address the issue. If this Court believes the Eleventh Amendment could bar Plaintiffs' claims, it should remand the case to the district court, so the court can undertake a proper immunity analysis pertaining to each defendant.

      1.    **Farm Sanctuary Plaintiffs sufficiently plead official-capacity claims for prospective relief against Individual Defendants**

*Ex parte Young* permits suits for prospective relief against state officials in their official capacities to halt ongoing violations of federal law. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *see also Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005) (*Ex parte Young* permits an exception to Eleventh Amendment immunity for a state official where the relief sought is prospective and not compensatory). Additionally, the Eighth Circuit recognizes that state officials sued for prospective *injunctive* relief are persons under § 1983. *Treleven v. Univ. of Minn.*, 73 F.3d 816, 819 (8th Cir. 1996) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989)); *see also Raymond v. Bd. of Regents of the Univ. of Minn.*, 140 F. Supp.3d 807, 814 (D. Minn. 2015). Contrary to University Defendants' assertions, University Defendants' brief at 29-30, Farm Sanctuary Plaintiffs sued Individual Defendants in both their official and individual

Appellate Case: 25-2503    Page: 23    Date Filed: 02/03/2026 Entry ID: 5603918

capacities, alleging that Individual Defendants took unconstitutional actions pursuant to their duties as employees of the University of Missouri with decision-making authority. App. 129, 133, 140; R. Doc. 39, at 1, 5, 12. Accordingly, where—as here—Plaintiffs seek prospective injunctive relief against the individual defendants to prevent continued constitutional violations, Eleventh Amendment immunity does not extinguish the official-capacity injunctive claims at this pleading stage.

University Defendants further argue Farm Sanctuary Plaintiffs have not pleaded an official capacity claim merely because the First Amended Complaint alleges in one section that Farm Sanctuary Plaintiffs are suing Individual Defendants in their individual or personal capacities. University Defendants' brief at 30. But that allegation simply clarifies that the Individual Defendants are not sued solely in their official capacities, rebutting any presumption that the First Amended Complaint only contains official-capacity claims. *See Egerdahl v. Hibbing Comm. College*, 72 F.3d 615, 619 (8th Cir. 1995) (a complaint is interpreted as including only official-capacity claims unless there is a clear statement that officials are being sued in their personal capacities). Moreover, the "complaint must be read as a whole, not parsed piece by piece." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007) ("courts must consider the complaint

24

in its entirety" when ruling on a Rule 12(b)(6) motion, not "scrutinized in isolation"). The First Amended Complaint sets forth numerous allegations that Farm Sanctuary Plaintiffs sued Individual Defendants in their official capacities. App. 129, 133, 140; R. Doc. 39, at 1, 5, 12.

Additionally, University Defendants incorrectly assert that "*any* claim" against individuals operating in their official capacity fails. University Defendants' brief at 30. It is well settled that State officials acting in their official capacities are § 1983 "persons" *when sued for prospective relief*, and the Eleventh Amendment does not bar such relief "because such actions 'are not treated as actions against the State.'" *See Treleven* 73 F.3d at 819; *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

Nor do University Defendants' contentions that "there are no facts demonstrating any 'ongoing' violations" and no allegations of "any real and immediate threat of being deprived of rights" warrant dismissal. University Defendants' brief at 29, 31. On a Rule 12(b)(6) record, the Court must credit Farm Sanctuary Plaintiffs' allegations that they regularly serve as a first responder for livestock highway rescues in the geographic area where University Defendants are located, and Farm Sanctuary Plaintiffs necessarily continue to rely on University Defendants' unique services, making recurrence plausible rather than speculative. App. 131-134, 141, 143, 146; R. Doc. 38, at 3-6, 13, 15, 18; *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance…dismissals based on a judge's disbelief of a complaint's factual allegations"). The First Amended Complaint alleges that "[a]bsent judicial intervention" University Defendants "will continue" or "may continue" the challenged practices and therefore requests injunctive relief to prevent recurrence. App. 141, 143, 146-47; R. Doc. 39, at 13, 15, 18-19. The relief sought is quintessentially forward-looking, and such allegations fit the recognized pathway for prospective relief under § 1983.

Farm Sanctuary Plaintiffs sufficiently plead official capacity claims for injunctive relief. At minimum, any arguable ambiguity is not a basis to affirm dismissal. And to the extent the district court did not address the issue in the first instance, the ordinary course is to remand to allow the district court to rule on it. *Huizenga v. Indep. Sch. Dist. No. 11*, 149 F.4th 990, 999 (8th Cir. 2025) (citing *Fergin v. Westrock,* 955 F.3d 725, 730 n.3 (8th Cir. 2020)).

### 2. Personal-capacity claims against Individual Defendants are not barred.

The Eleventh Amendment does not bar § 1983 claims seeking damages against state officials sued in their personal capacities. *Murphy*, 127 F.3d at 754. Defendants' attempt to minimize the individual capacity posture goes to merits

Appellate Case: 25-2503    Page: 26    Date Filed: 02/03/2026 Entry ID: 5603918

defenses, not jurisdictional immunity. Because Eleventh Amendment immunity does not apply to personal capacity damages claims, it cannot justify affirming dismissal of those claims as they pertain to Individual Defendants.

University Defendants assert the individual capacity claims were properly dismissed because Farm Sanctuary Plaintiffs allegedly seek no monetary damages other than lien related expenses. University Defendants' brief at 31. This argument misstates § 1983 remedies and the pleading standard. There can be no doubt that § 1983 affords compensatory damages to a plaintiff who can prove actual injury from a procedural due process violation. *Carey v. Piphus*, 435 U.S. 247, 264 (1977); *see also Graham v. Baughman*, 772 F.2d 441, 446 (8th Cir. 1985). Moreover, § 1983 also affords mental and emotional distress damages for injuries caused by the defendant's denial of procedural due process. *Stevens v. McHan*, 3 F.3d 1204, 1207 (8th Cir. 1993) (citing *Carey*, 435 U.S. at 264).

At the pleading stage, Farm Sanctuary Plaintiffs are not required to prove or precisely quantify damages. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint need not show a "probability requirement"); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012)

(pleading stage does not require "formal level of evidentiary proof"); *see also Braden,* 588 F.3d at 594 (well-pleaded complaint may proceed even if "actual proof" seems "improbable" and recovery "remote"). Farm Sanctuary Plaintiffs,

including Plaintiff Shawn Camp, allege injury resulting from University Defendants' unconstitutional acts and consequently seek compensatory damages in accordance with proof. App. 131, 137, 141, 144, 146-147; R. Doc. 39, at 3, 9, 13, 16, 18-19. The absence of a damage ledger in the First Amended Complaint is not a basis to extinguish personal capacity claims.

Finally, University Defendants' argument ignores the core allegation that Individual Defendants destroyed these sheep without any notice at all to Farm Sanctuary Plaintiffs. That is the paradigm for personal capacity § 1983 liability. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (personal-capacity suits impose individual liability for actions taken under color of state law). Because the Eleventh Amendment does not reach such claims, and because Defendants' remaining objections turn on merits-based issues not decided below, the proper course is reversal and remand. *See Huizenga*, 149 F.4th at 999.

### 3. Dismissal is not justified even if the Curators claim immunity.

University Defendants contend the Curators is an "arm of the State" entitled to Eleventh Amendment immunity and therefore not a "person" subject to suit under § 1983. Even if the Court accepts that premise, it does not justify dismissal of the action. First, the Eleventh Amendment does not bar § 1983 damages claims against state officials sued in their individual capacities. *Hafer*, 502 U.S. at 30–31; *Murphy*, 127 F.3d at 754. Second, to the extent Defendants argue *Ex parte Young*

28

"applies only" to officials (not the Curators) and therefore cannot save Farm

Sanctuary Plaintiffs' claims, that argument is overbroad: it is true that *Ex parte*

*Young* "has no application in suits against the States and their agencies," *P.R.*

*Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993), but

that point merely identifies the proper defendants for prospective relief—state

officials in their official capacities—not a basis to dismiss the entire case. *Ex parte*

*Young*, 209 U.S. at 159–60; *Waddle*, 427 F.3d at 531–32.

Farm Sanctuary Plaintiffs seek narrowed relief by disclaiming monetary

damages and allege only injunctive and declaratory relief as to the Curators. *See*

*Sherman v. Curators of the Univ. of Mo.,* 871 F.Supp. 344 (W.D. Mo. 1994)

(University of Missouri was entitled to Eleventh Amendment immunity where a

judgment rendered against the University for monetary damages, not injunctive

relief, would be paid by state funds). And if this Court nonetheless reaches the

"arm of the State" question, that inquiry is circumstance-specific in this Circuit,

and turns heavily on the "most important" treasury factor, which has not been

analyzed by the district court. *See Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir.

1985); *see also Sherman v. Curators of the Univ. of Mo.*, 16 F.3d 860, 863 (8th Cir.

1994).

On the record and posture here—where the district court did not analyze

these immunity issues—Curators' immunity, even assuming it is applicable, is not

a basis to affirm dismissal of the action. At most it affects whether the Curators remain as a named defendant and supports remand for appropriate analysis. *See Huizenga*, 149 F.4th at 999.

## III.   CONCLUSION

For the foregoing reasons, Farm Sanctuary Plaintiffs respectfully request that the Court reverse the district court's final judgment and remand for further proceedings on the merits.

Dated: February 2, 2026                    Respectfully submitted,

By:   */s/ Cyrus J. Moshiri*
Jessica L. Blome
Cyrus J. Moshiri
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703

*Attorneys for Appellants Iowa Farm Sanctuary and Shawn Camp*

30

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Federal R. App. P. 32(f), this document contains 5,335 words, which is less than 6,500 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 Version 16.99.2 and using the 14-point Times New Roman font. The brief has been scanned for viruses and is virus-free.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 2, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/ Cyrus J. Moshiri*
Cyrus J. Moshiri
Greenfire Law, PC

32